## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

S. C. JOHNSON & SON, INC., a
Wisconsin corporation,

            Plaintiff,

        v.

BUZZ OFF INSECT SHIELD, L.L.C.,
Successor in Interest to R.A. LANE
CORPORATION,

            Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

**FILED**

FEB 2 2 2005

MICHAEL W DOBBINS
CLERK, U.S. DISTRICT COURT

JUDGE KENNELLY

**05C 1046**

JURY DEMAND

**MAGISTRATE JUDGE KEYS**

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff S. C. JOHNSON & SON, INC. complains against Defendant BUZZ OFF

INSECT SHIELD, L.L.C. and alleges as follows:

### I.    INTRODUCTION

1.    This is a civil action for trademark infringement, unfair competition and false

advertising arising under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and for related violations

of state law, respectively. With this complaint SC Johnson is seeking permanent injunctive relief

including corrective advertising, as well as statutory and compensatory damages and attorneys'

fees. SC Johnson manufactures, under the trademark OFF and related marks, a variety of

personal and area insect repellent products. SC Johnson's OFF! brand insect repellents are, by

far, the largest selling insect repellents in the United States. BOIS is a competitor of SC Johnson

in the insect repellent category. As described in detail herein, BOIS's product, BUZZ OFF

Insect Shield Insect Repellent Apparel, is clothing that has been treated with the insecticide

permethrin in a manner that, according to BOIS, has the effect of protecting individuals who

wear the apparel from being bitten by mosquitoes and other biting insects.

## II.    **THE PARTIES**

2.    S. C. JOHNSON & SON, INC. (hereinafter "Plaintiff" or "SC Johnson"), is a corporation duly organized and existing under the laws of the State of Wisconsin, having its principal place of business at 1525 Howe Street, Racine, Wisconsin 53403.

3.    Defendant BUZZ OFF INSECT SHIELD, L.L.C. (hereinafter "BOIS" or "Defendant") is a North Carolina limited liability corporation with its principal place of business located at 701 Green Valley Road, Suite 302 Greensboro, North Carolina 27408.

4.    Defendant BOIS is involved in the processing, licensing, and marketing of insect-repellent clothing and related goods under the brand name BUZZ OFF Insect Shield Insect Repellent Apparel ("BUZZ OFF Insect Repellent Apparel").

5.    Defendant processes and licenses products bearing the infringing marks for sales through retail stores to consumers throughout the United States and in the State of Illinois, including this judicial district. Such products bear the infringing mark BUZZ OFF.

6.    Defendant further enters into contractual relationships with manufacturers and retailers located throughout the United States and in the State of Illinois, including this judicial district, for promotion and sale of products bearing the infringing mark.

7.    BUZZ OFF Insect Repellent Apparel is advertised and offered for sale and/or sold throughout the United States and in the State of Illinois, including this judicial district.

8.    BOIS makes (a) materially false and misleading advertising claims about the efficacy, use, and product attributes of BUZZ OFF Insect Repellent Apparel on its own website and (b) upon information and belief, makes, facilitates, or helps facilitate materially false advertising claims on and through the websites of other companies, including Orvis, Ex Officio, Bass Pro Shops and L.L. Bean (collectively, the "BOIS Partners"), which market and sell BUZZ OFF Insect Repellent Apparel co-branded under their own brand names and/or logos in

-2-

11840041

partnership with BOIS throughout the United States and in the State of Illinois, including this judicial district. As the BOIS website describes, BOIS has "team[ed] up with a few select apparel manufacturers and distributors to produce innovative insect-repellent apparel for the consumer market." (*See* BOIS website, About BUZZ OFF, http://www.buzzoff.com/welcome/site/about). The BOIS Partner websites can be accessed from eleven different links on the BOIS website, including the BOIS homepage.

9.    These false and misleading advertising claims are then further disseminated by various vendors and retailers that, upon information and belief, are "affiliates" of certain BOIS Partners, such as R.E.I. and Cabela's (referred to herein as "BOIS Partner Affiliates"). Upon information and belief, this is accomplished because Orvis, Ex Officio and Bass Pro Shops websites each offer an "affiliate program" that permits other websites to link to them and earn a referral fee or commission on any sales.

10.    The false and misleading claims set forth herein are also made by BOIS Partners in their catalogs and through other print advertisements all, upon information and belief, as part of a common marketing scheme or plan of BOIS and BOIS Partners.

### III.    JURISDICTION AND VENUE

11.    This Court has jurisdiction over this action pursuant to 15 U.S.C. §§ 1121 and 28 U.S.C. §§ 1331 and 1338, and pursuant to 28 U.S.C. § 1332(a) and (a)(1) because the amount in controversy exceeds $75,000 exclusive of interest and costs and is between citizens of different states.

- 3 -

11840041

12.    Venue is proper in this federal judicial district pursuant to 28 U.S.C. § 1391(b)(2), because Defendant is doing business within this judicial district and a substantial part of the events giving rise to the claims alleged herein occurred within this district.

13.    This Court has personal jurisdiction over BOIS because BOIS, through its website and those of its BOIS Partners, sells products, offers products for sale (including via the advertisements that are the subject of this lawsuit), and otherwise conducts business in the State of Illinois, including this judicial district.

14.    In addition, BOIS makes the false advertising claims that give rise to this action on its own website, and through the BOIS Partners on their individual websites, which are directly linked with the BOIS website and which offer the advertised products for sale through websites that can be accessed by Illinois consumers and through which Illinois consumers can order the advertised products and cause the products to be shipped to them in Illinois. Illinois consumers can similarly access and order from the websites of BOIS Partner Affiliates.

## IV.    ALLEGATIONS COMMON TO ALL CLAIMS

### A.    SC Johnson

15.    SC Johnson, which has extensively advertised its business as "SC Johnson. A Family Company," is a 118-year-old, family-owned and family-managed business dedicated to innovative, high-quality products, excellence in the workplace, and a long-term commitment to the environment and the communities in which it operates.

16.    SC Johnson is and has for many years been engaged in the development, manufacture, and sale of, among other things, household cleaning goods, insecticides, and various related insect repellent products, and has built a large and profitable business in connection therewith

-4-

### 1.  OFF Products and the Insect Repellent Industry

17.     SC Johnson markets and manufactures a variety of area and personal insect repellents and insect repellent products under its famous OFF and related brands. SC Johnson's OFF! repellent products are used by consumers to repel mosquitoes, ticks, and other biting insects.

18.     SC Johnson's OFF! branded repellent products have been a trusted brand for over 45 years, and are the leading selling insect repellents in the United States. OFF products can be purchased in most mass merchandise outlets, grocery stores and drug stores, do-it-yourself and hardware stores, warehouse clubs, outdoor and adventure specialty retailers, and also are available through online retailers.

19.     The active ingredient in most OFF personal repellent products is DEET, which has long been widely recognized by the Centers for Disease Control and others as the most effective commercially available active ingredient for repelling mosquitoes and other biting insects from human skin.

20.     The active ingredients in most OFF area repellents, such as the OFF! Lamp and OFF! Yard and Deck are synthetic pyrethroids, such as permethrin and allethrin.

21.     Consumers typically purchase products designed to repel or kill mosquitoes in order to avoid the annoyance and pain of mosquito bites and/or to protect against mosquito-borne diseases, such as the West Nile Virus which, in the most severe cases, can lead to debilitating illnesses such as encephalitis, meningitis, or meningoencephalitis, and even death.

22.     Because of the potential morbidity of the health problems caused by West Nile virus and other mosquito-borne diseases, any false or misleading claims about the efficacy of insect repellent or insect killing products could have serious public health consequences.

-5-

23.    Traditional topical repellents formulated with DEET, such as SC Johnson's OFF! repellents, are sprayed or rubbed directly on the skin, but can also be sprayed on certain clothing. They prevent mosquitoes from landing on the skin, and hence from biting the skin.

24.    By contrast, area repellents utilizing synthetic pyrethroids use active ingredients that are insecticides which kill flying insects on contact, but which may also have a repellent effect when disseminated into the air.

### 2. SC Johnson's BUZZOFF Mark

25.    On February 9, 2005, SC Johnson added to its OFF-based series of marks by acquiring all of the rights to and interests in the "BUZZOFF" trademark (as well as the BUZZOFF and Design trademark) in connection with insect repellent protective apparel, among various other related products.

26.    The prior owner and SC Johnson's current licensee of the BUZZOFF mark is Maryed International, Inc. ("Maryed"), a Florida corporation having its principal place of business at 1501 SE Decker Avenue, #104-A, Stuart, Florida.

27.    Maryed first established common law rights in the BUZZOFF mark in association with insect repellent protective apparel at least as early as May 31, 1992 and has continuously used the BUZZOFF mark in interstate commerce to the present. Additionally, Maryed obtained a Florida Trademark Registration for its BUZZOFF mark on June 17, 1992.

28.    Maryed's insect repellent protective apparel products are marketed and sold under the brand name BUZZOFF™ Outdoor Wear throughout the United States and internationally through the Internet and through retailers such as R.E.I., Cabela's, and Bass-Pro Shops, as well as directly from Maryed. Maryed's products also have been sold through Wal*Mart stores in the southeastern United States. (Attached as Exhibit A are examples of Maryed's BUZZOFF mark and samples of apparel bearing this mark.)

- 6 -

11840041

29.    Maryed assigned all of the rights and interests in the BUZZOFF mark to SC Johnson, including: "any and all claims for damages by reason of past infringement of the mark together with the right to sue and collect damages therefore as fully as if Maryed had filed such action in its own name. Further, Maryed agrees to cooperate in any such actions to the extent reasonably required by [SC Johnson] to enforce the rights assigned herein."

30.    Immediately after acquiring the rights to the BUZZOFF mark, SC Johnson filed a Federal Trademark application with the United States Patent and Trademark Office.

31.    As a result of the trademark licensing and rights acquisition, the BUZZOFF mark is now part of SC Johnson's OFF-based series of marks.

### 3.    SC Johnson's Historical Use of Its Distinctive OFF mark

32.    The Maryed BUZZOFF product line is the newest addition to SC Johnson's distinctive and well-known OFF insect repellent product line.

33.    SC Johnson's well-known OFF and OFF-based series of marks contain numerous U.S. registrations for insect repellent and related products including, but not limited to: insect repellent; citronella candles for use as an insect repellent; insect repellent for use upon humans, animals, and clothing; lighting devices such as lamps and lanterns; and related goods.

- 7 -

1184004I

34.    For example, SC Johnson owns U.S. Registration No. 1,594,843, which issued

May 8, 1990 for the mark OFF for "insect repellent," which registration is valid, subsisting, and

incontestable.  This registration bears a date of first use of May 9, 1957.  In addition to the

*pending application for the BUZZOFF mark, SC Johnson's registrations for its famous OFF and*

OFF-based marks include:

| Mark | Registration No. | Registration Date | Goods | Priority Date |
|---|---|---|---|---|
| OFF! | 1,594,843 | May 8, 1990 | Insect repellent | 05/09/1957 |
| DEEP WOODS OFF! | 1,596,048 | May 15, 1990 | Insect repellent | 01/1974 |
| OFF! | 2,169,628 | June 30, 1998 | Citronella candles for use as insect repellent | 02/28/1995 |
| OFF! PROTECTION THAT GLOWS! | 2,564,501 | April 23, 2002 | Lighting devices, namely lamps and lanterns | 12/18/2000 |
| OFF! BOTANICALS | 2,807,688 | January 27, 2004 | Insect repellents | 12/13/2001 |
| OFF! PROTECTION THAT GLOWS! | 2,664,026 | December 17, 2002 | Candles; insect repelling pads; lamps and candle lanterns for insect repelling | 12/18/2000 |
| OFF! DEEP WOODS | 2,819,942 | March 2, 2004 | Insect repellents for personal use and on clothing and other fabrics | 01/01/1997 |

(Attached at Group Exhibit B are publicly available copies of the above-listed registrations.)

35.    Thus, since as early as May 9, 1957, SC Johnson has used its OFF and OFF-based

series of marks in commerce on or in connection with a variety of insect repellent and related

goods. (Attached at Group Exhibit C are examples of various insect repellent products sold by

SC Johnson displaying the OFF and OFF-based marks.)

36.    SC Johnson sells many millions of dollars of products each year and spends many

millions more advertising the OFF brand and OFF-based series of products each year.

37.    By virtue of SC Johnson's extensive and continuous usage, coupled with

substantial sales in commerce and significant promotional activities, SC Johnson has achieved

widespread recognition with the relevant trade and public of its OFF and OFF-based series of

- 8 -

marks for insect repellent and related repellent goods, creating a substantial and valuable goodwill among the relevant trade and public with respect to such marks.

### B.    Defendant BOIS's BUZZ OFF Insect Repellent Apparel

38.    On October 24, 2001, R.A. Lane Corporation filed Application Serial No. 76/329,269 for the mark BUZZ OFF for "applying insect repellant and insecticide to fabric, garments, and other items constructed from fabric," in International Class 40 with the United States Patent and Trademark Office.

39.    Subsequently, BOIS has filed additional applications with the USPTO for various other products including, among other things, "outdoor furniture fabrics, beach towels, draperies, window treatments...shams, linen, textile tapestries" as well as "doormats, carpets, rugs, [and] cloth wall coverings."

40.    R.A. Lane Corporation assigned its rights to the trademark BUZZ OFF to Defendant BOIS in December 2002.

41.    Defendant BOIS is currently involved in the processing, licensing, and marketing of several lines of insect-repellent clothing under the brand name BUZZ OFF Insect Shield Insect Repellent Apparel.

42.    BUZZ OFF apparel includes shirts, jackets, pants, shorts, socks and hats that BOIS advertises as providing wearers with protection against mosquitoes and other biting insects. The active ingredient in BUZZ OFF apparel is the synthetic pyrethroid permethrin (0.52%). BOIS holds an EPA registration for the products it processes with permethrin, as well as for the permethrin intermediate it uses for processing.

43.    In contrast to DEET, permethrin functions primarily as a contact insecticide, stunning or killing insects that come in contact with it. With certain limited exceptions not relevant here, permethrin is not indicated for application directly on human skin.

- 9 -

11840041

44.     According to BOIS, the insect-repellent protection offered by BUZZ OFF Insect Repellent Apparel allegedly is accomplished through a "patent-pending" process whereby the active ingredient, permethrin, is "bound" to finished items of apparel.

45.     BOIS treats finished items of apparel with permethrin in a manner such that the active ingredient allegedly permeates or saturates the fabric. According to BOIS' materials, the permethrin eventually is removed from the treated apparel through repeated washings. The permethrin bound to the BUZZ OFF Insect Repellent Apparel does not have any sort of umbrella or force field effect that prevents or discourages mosquitoes from landing on, and biting, the apparel-wearer's exposed skin if the apparel-wearer is not also wearing a topical insect repellent. Areas of exposed skin that either would not or (depending on the particular item(s) of apparel worn) might not be covered by the Apparel, include the wearer's face, neck, hands, arms, and legs.

46.     The BOIS Partners are garment manufacturers, wholesalers and/or retailers. BOIS applies its permethrin-binding "process" to finished apparel that is provided to BOIS by the BOIS Partners according to BOIS specifications. This permethrin-treated apparel is then marketed by BOIS and the BOIS Partners and under the brand name BUZZ OFF Insect Shield Insect Repellent Apparel, and sold directly to consumers by the BOIS Partners and, upon information and belief, BOIS Partner Affiliates.

47.     All apparel to which BOIS's process is applied includes, and pursuant to BOIS's EPA registration, must include the BUZZ OFF brand name and the BOIS Partner name on its tags. This information often is also included in advertising of the product.

48.     BUZZ OFF Insect Repellent Apparel is sold at various outdoor-specialty stores, online through the BOIS website via at least eleven direct links to the BOIS Partner websites, as

- 10 -

11840041

well as online directly through BOIS Partner websites, and upon information and belief, through
BOIS Partner Affiliate websites.

49.     BUZZ OFF Insect Repellent Apparel is also available through the catalogs of the
BOIS Partners.

50.     SC Johnson and BOIS are in direct competition with one another for consumers
seeking protection from biting insects. BOIS and the BOIS Partners position BUZZ OFF apparel
in advertising marketing materials as a substitute for traditional personal repellents such as Deep
Woods OFF! personal repellent, one of SC Johnson's products. Moreover, consumers seeking
repellent clothing will be presented with a choice between SC Johnson's licensed BUZZOFF
clothing and Defendant's BUZZ OFF apparel.

51.     SC Johnson and BOIS sell products virtually side by side in the same retail
outlets. As a result, consumers for the two product lines are virtually identical.

52.     Consumers who are likely to purchase both SC Johnson's OFF! personal insect-
repellent products (including its licensed BUZZOFF protective apparel) or Defendant's BUZZ
OFF apparel include various outdoor enthusiasts, such as hikers, campers, people who engage in
outdoor sports activities, and hunters, as well as any individual who goes outdoors in an area
where mosquitoes and other biting insects are prevalent.

## V.     ALLEGATIONS RELATING TO TRADEMARK INFRINGEMENT

53.     Defendant was aware of SC Johnson's rights in the registrations for its OFF-based
marks at least as early as October 2001, and before filing the intent to use application for the
BUZZ OFF service.

54.     Notwithstanding Defendant's actual and constructive notice of SC Johnson's
rights, Defendant adopted its BUZZ OFF mark despite the likelihood of confusion with
SC Johnson's marks.

- 11 -

11840041

55.    Since at least August 2003, Defendant began to offer services for applying insect repellent and insecticide to fabric, apparel and other items constructed from fabric. Such services are related to SC Johnson's insect-repellent products. Apparel products bearing Defendant's BUZZ OFF mark or labels are in stores today. Defendant's adoption of its BUZZ OFF mark was long after SC Johnson's first use of OFF and long after common law rights were established in SC Johnson's BUZZOFF mark.

A.    **Defendant's Prior Dealings With Maryed and Confusion in the Market**

56.    On information and belief, Defendant also was aware of Maryed's (SC Johnson's predecessor in interest) rights in the BUZZOFF mark for use with insect repellent clothing before filing the intent to use application for the BUZZ OFF service. In or about January 2003, Haynes Griffin, current Chairman and CEO of BOIS, and Richard A. Lane, current President of BOIS, first contacted Mary Baltes, the President/Director of Maryed. In repeated contacts, Griffin expressed interest in Maryed's products.

57.    Recognizing Maryed's prior common law rights and the certainty of confusion with the BUZZOFF mark, Defendant sought to acquire these rights.

58.    Baltes initially was not interested in meeting with Griffin and Lane. However, after repeated requests, on or about March 7, 2003, Baltes (along with business associate Anthony Amendola) agreed to meet with Griffin and Richard Lane, who traveled to Florida for the meeting.

59.    During the March 7, 2003 meeting, Griffin and Lane presented Baltes with significant amounts of information they had obtained about Maryed and BUZZOFF apparel. Included in this presentation was material obtained from Maryed's website www.buzzoffoutdoorwear.com.

- 12 -

11840041

60.    During this March 7, 2003 meeting, Griffin and Lane explained to Baltes that they (and their potential business partners) intended to launch a new product in the national market. This new product would be clothing treated with "natural" repellents. Griffin explained that these garments would be sold by companies such as Ex Officio, Orvis and Polo.

61.    Griffin also stated that the product would be entitled "BUZZOFF" insect protection shield. Griffin and Lane said that they wanted to partner with Maryed, combining their product with hers. At Griffin and Lane's request, Baltes provided Griffin and Lane several pieces of the Maryed BUZZOFF apparel samples at this time, and later sent enough samples to ensure that Griffin and Lane had two complete sets of the BUZZOFF clothing line.

62.    Recognizing the actual confusion conflict that Maryed's prior use created for their proposed mark and the competition in the market, Griffin and Lane sought to acquire Maryed's BUZZOFF trademark rights.

63.    Griffin proposed a business arrangement with Maryed whereby Maryed would assign all of its rights with respect to the trademark BUZZOFF to Defendant in exchange for a non-exclusive and royalty-free license for Maryed to continue to use the trademark with products it was currently manufacturing. Griffin's proposal further provided that Maryed would have to pay BOIS for treating her apparel with its treatment process. As a result, the proposal offered Maryed nothing, either in substance or fact, in exchange for her trademark rights.

64.    Shortly after the meeting, Griffin provided Maryed with a proposed licensing agreement setting forth the business arrangement.

65.    Upon consideration of this arrangement, Maryed determined that it did not want to enter into the business relationship with Defendant proposed by Griffin and Lane.

66.    Over the course of the next few months, Defendant continued to propose potential arrangements between the companies. However, all of Defendant's proposals to Maryed would

- 13 -

11840041

have required that Maryed assign to Defendant all of its rights with respect to its BUZZOFF mark in exchange for a royalty-free license to Maryed to use the mark with its manufactured products. Just as with the first proposal, none of the further proposals offered by Defendant ever provided any compensation to Maryed for the trademark rights sought.

67.    Baltes concluded that Defendant's real interest was in acquiring her trademark rights at no cost and determined that it was not in Maryed best interest to enter into any business arrangement with Defendant. Baltes rejected the proposals provided to her by Griffin.

68.    On or about August 18, 2003, Defendant launched its product in the market without obtaining Maryed's prior rights to the BUZZOFF mark for apparel. Just as Defendant apparently anticipated, Maryed immediately became aware of the actual consumer confusion created in the market by the launch of Defendant's apparel products. Maryed repeatedly was contacted by various customers seeking to determine what affiliation her company had with BUZZ OFF or Defendant.

69.    As discussed in various communications sent to Maryed, consumers, competitors, and retailers in the industry immediately were confused about whether there was a relationship, license, sponsorship or endorsement, etc. between Maryed's BUZZOFF apparel and Defendant's BUZZ OFF apparel. For example:

> a) on August 18, 2003, Maryed received an email from a competitor who heard an advertisement for Defendant's company and misunderstood it to be associated with Maryed (a copy is attached as Group Exhibit D);
>
> b) on September 24, 2003, Maryed received an inquiry from a consumer who was inquiring about "BUZZ OFF clothing" that was advertised at Orvis (a distributor of Defendant) (a copy is attached as Group Exhibit D); and
>
> c) on October 6, 2003, Maryed received requests from Cabela's (a distributor of Maryed's apparel) seeking photo samples of the new "programs" with Ex Officio to be used in advertisements (a copy is attached as Group Exhibit D).

- 14 -

11840041

70.    In 2004, consumers continued to mistakenly believe there was a common source

or sponsorship of Defendant's BUZZ OFF apparel and Maryed's BUZZOFF products.  For

example:

> d)  on March 1, 2004, Maryed received an inquiry from a consumer who
> had mistakenly believed that Maryed was the manufacturer of the clothing
> that was displayed on an Orvis website (a copy is attached as Group
> Exhibit D);
>
> e)  on April 8, 2004, a consumer emailed Maryed to determine if she was
> the manufacturer of the "Buzz-off clothing" sold by Ex Officio and Orvis
> (a copy is attached as Group Exhibit D);
>
> f)  on April 28, 2004, a consumer sought assistance from Maryed to
> locate some of "[its] BuzzOff clothing" because Orvis (a distributor of
> Defendant) would be unable to ship until July (a copy is attached as Group
> Exhibit D);
>
> g)  on May 17, 2004, Maryed received an inquiry from a publisher asking
> questions about the "line of clothing at Orvis" (a copy is attached as
> Group Exhibit D);
>
> h)  on July 3, 2004, Maryed received a request for information about
> "buzz off stuff at REI" that a consumer could not find on the
> www.buzzoffoutdoorwear.com website (a copy is attached as Group
> Exhibit D); and
>
> i)  on September 2, 2004, a competitor contacted Maryed to inquire if the
> company was selling the "Buzz Off" clothing that was "pemithrin [sic]
> soaked clothing" (a copy is attached as Group Exhibit D).

**B.    Competition Between SC Johnson and Defendant and Prior Proceedings**

71.    Under the BUZZ OFF mark, Defendant offers or intends to offer services for

applying insect repellent and insecticide to fabric, garments, and other items constructed from

fabric.  Defendant also offers, through licensees, apparel and related items under the BUZZ OFF

mark.

72.    In addition to selling insect-repellent apparel under the BUZZOFF mark,

SC Johnson recommends to consumers who purchase certain high-DEET OFF! products that

they spray this product on their clothing rather than on their person.

- 15 -

11840041

73.     Defendants advertise, market and enter into contracts to sell BUZZ OFF Insect Repellent Apparel displaying the BUZZ OFF mark to the public at large via the Internet and through sales to retailers such as Orvis, Bass Pro Shops, R.E.I., Cabela's and L. L. Bean.

74.     SC Johnson's OFF! branded repellents are sold to the public via the Internet and through sales to retailers such as R.E.I., and Bass Pro Shops.  Products sold by Maryed under SC Johnson's BUZZOFF mark are sold in the same channels of trade as those sold by Defendant.

75.     Defendant's BUZZ OFF products compete with SC Johnson's insect repellent goods as well as SC Johnson's service of offering such goods for sale.

76.     Consumers encountering the term OFF, or a composite mark containing the term OFF, for use on or in connection with repellent-related products, reasonably would believe that such products are offered or otherwise sponsored by SC Johnson.

77.     Defendant's BUZZ OFF mark is substantially similar in sound and appearance to SC Johnson's OFF! and OFF-based series of marks (including the acquired BUZZOFF mark). The single term that distinguishes Defendant's mark from SC Johnson's -- "buzz" -- is a word that is closely associated with the very nuisance both parties seek to prevent, insects and bugs. As such, this additional term does nothing to set itself apart from SC Johnson's OFF-based series of marks.

78.     Defendant's BUZZ OFF mark is nearly identical both visually and orally to SC Johnson's BUZZOFF mark.

79.     As set forth in paragraphs 69 and 70 above, there has been actual confusion in the marketplace regarding an association and/or affiliation between Defendant's BUZZ OFF mark and SC Johnson's prior BUZZOFF mark.

- 16 -

11540041

80.    Neither SC Johnson or Maryed has ever consented to Defendant's copying or imitating its highly distinctive OFF and OFF-based marks.

81.    On or about October 22, 2002, SC Johnson learned that Defendant had filed an application to register BUZZ OFF as a service to be used on apparel in the United States Patent and Trademark Office.

82.    On February 19, 2003, SC Johnson made its first filing in the United States Patent and Trademark Office to preserve its rights to oppose issuance of registration to Defendant based on likelihood of confusion with SC Johnson's prior registered and unregistered rights in its well-known and famous OFF and OFF-based marks for insect repellent products.

83.    After SC Johnson's attempts to negotiate a resolution with Defendant were unsuccessful, SC Johnson commenced an opposition proceeding before the United States Patent and Trademark Office, Trademark Trial and Appeal Board, to oppose the issuance of a federal registration to Defendant for apparel, based on SC Johnson's prior rights.  Opposition No. 91155504 is now pending before the United States Patent and Trademark Office, Trademark Trial and Appeal Board.

84.    Subsequent to SC Johnson's opposition to BOIS' trademark application, BOIS filed additional applications with the U. S. Trademark Office for BUZZ OFF for use with apparel and related goods.

85.    Since May 2003 and continuing to the present, despite having knowledge of SC Johnson's senior rights, Defendant continues to profit from BUZZ OFF Insect Repellent Apparel, thus infringing SC Johnson's rights in its well-known marks by creating a likelihood of confusion.

86.    Despite SC Johnson's demands, Defendant continues its unlawful use of the BUZZ OFF trademark.

- 17 -

11840041

87.     Defendant's copying and imitating of SC Johnson's registered OFF and OFF-based marks has created and continues to create a likelihood of confusion, mistake or deception as to the origin, sponsorship or authorization of apparel bearing Defendant's BUZZ OFF mark.

## VI.    ALLEGATIONS RELATING TO BOIS'S FALSE ADVERTISING

88.     BOIS engages in brand advertising through its website and also through the websites and materials of the BOIS Partners. Additionally, the BOIS website includes eleven different direct links to the BOIS Partners, which also market, and ultimately sell, BUZZ OFF Insect Repellent Apparel.

### A.     False Claims on BOIS's Website

89.     BOIS's website, the "url" address of which is "www.buzzoff.com," makes several claims that falsely and unambiguously communicate that by wearing BUZZ OFF Insect Repellent Apparel, consumers can reduce or eliminate the need to apply an insect-repellent product on the skin and that falsely communicate that BUZZ OFF Insect Repellent Apparel protects uncovered skin.

90.     The BOIS advertising materials reinforce these claims by emphasizing the "hassle" of applying "messy" insect-repellent products directly to the skin. For example:

> a) "The BUZZ OFF process tightly binds the active ingredient to the garment, creating an invisible and odorless protection for the wearer."[1]
>
> b) BUZZ OFF Insect Repellent Apparel is referred to as "worry-free and convenient" and one "BUZZ OFF Fact" claims that "[w]earing BUZZ OFF apparel reduces the need to apply insect-repellent creams, lotions or sprays directly to the skin," while later commenting that "applying

---

[1] *See* Press Release, BOIS, Insect-Repellent Apparel Registered by EPA (July 30, 2003), available at http://www.buzzoff.com/welcome/releases/release /buzz-off-insect-repellent-apparel-registered-by-epa. (A copy is attached at Group Exhibit E.)

- 18 -

1184004

repellents to the skin can be messy and frequent re-application is a hassle."[2]

c) The BOIS website includes a link to "BUZZ OFF In the News," which excerpts language from news articles and provides links to the articles in their entirety, the full text of which can be accessed for a fee. One article excerpt includes the claim: "Imagine walking through the north woods with . . . no spray cans, no creams, no DEET . . . no way! Until Now. Orvis just introduced a new line of clothing called BUZZ OFF that erases the need for other insect repellents. . . . In spite of all the credentials, patents and hoopla, we don't hand out Editor's Choice Awards without extensive testing, so we sent Bill Battles to Ontario in the stuff . . . . He swears that not a single one landed anywhere on him, and that's good enough for us."[3]

91.    The BOIS website includes multiple testimonials that negatively portray topical

(*i.e.* personal) insect repellents, and promote the efficacy of the BUZZ OFF product on

uncovered areas. For example:

a) "I would absolutely choose BUZZ OFF Apparel [over spray/liquid], because it was actually more effective for me, and because I didn't have to completely slather myself with insect repellent. . . ."[4]

b) Things I liked best about this product were: No smell!! No mess."[5]

c) "BUZZ OFF definitely allowed me to work in areas that would have been impossible to tolerate without applying some kind of insect repellent. One of the good things about these clothes is that you don't have to be constantly re-applying chemicals to your skin."[6]

d) "This year we wore BUZZ OFF treated clothes, and even though the flies and mosquitoes were as bad as ever, *we got nearly perfect protection from them without having to use any insect repellent at all.* Instead of the dozens of mosquito and black fly bites I have gotten in previous years, with BUZZ OFF I got only one bite from a black fly which flew up in my

---

[2] *See* BOIS website, BUZZ OFF Insect Repellent Apparel Facts, available at
http://66.160.135.181/welcome/site/facts. (A copy is attached at Group Exhibit F.)
[3] *See* BOIS website, BUZZ OFF In the News link, Fly Fish America Editors' Choice Awards 2004, available at
http://www.buzzoff.com/welcome/site/in-the-news. (A copy is attached at Group Exhibit G.)
[4] *See* BOIS website, Testimonials link, testimonial attributed to Helen Stumbo, available at
http://www.buzzoff.com/welcome/site/testimonials. (A copy is attached at Group Exhibit L.)
[5] *See* BOIS website, Testimonials link, testimonial attributed to Phillip Jaffee, available at
http://www.buzzoff.com/welcome/site/testimonials. (A copy is attached at Group Exhibit H.)
[6] *See* BOIS website, Testimonials link, testimonial attributed to Capt. Gary Taylor of LA, available at
http://www.buzzoff.com/welcome/site/testimonials. (A copy is attached at Group Exhibit H.)

- 19 -

sleeve and got trapped there. **I took Deep Woods OFF!** in my tackle box
but never even got it out. **In short**, in 20 years of these fishing trips, no
matter how much DEET I used, I don't think I ever came back with fewer
than 25 black fly bites. **This year** with BUZZ OFF clothes and no DEET
at all, I got only one **black fly bite-** and not even one mosquito bite."[7]

## B.   False Claims on the BOIS Partners' Websites

92.    The BOIS Partners make similar and sometimes identical claims to those found

on the BOIS website. The BOIS Partners' websites are located at the following "url" addresses:

www.exofficio.com, www.orvis.com, www.llbean.com and www.basspro.com.

93.    These websites falsely and unambiguously communicate that by wearing BUZZ

OFF Insect Repellent Apparel, consumers can reduce or eliminate the need to apply an insect-

repellent product on the skin and that falsely communicate that BUZZ OFF Insect Repellent

Apparel protects uncovered skin.

94.    The BOIS Partners claim that simply "wearing" BUZZ OFF Insect Repellent

Apparel provides insect-repellent protection for the entire body.  For example:

> a) BUZZ OFF apparel ". . . creates an *invisible and odorless barrier that
> . . . provides protection from mosquitoes . . . .*"[8]
>
> b) BUZZ OFF apparel "provides the entire family with immediate
> protection from mosquitoes, ticks and other annoying and potentially life-
> threatening insects, simply by *wearing* the product. . . . *BUZZ OFF Insect
> Repellent Apparel works by creating an invisible and odorless protective
> barrier around the clothes and body.*"[9]

---

[7] *See* BOIS website, Testimonials link, testimonial attributed to Thomas Collins, available at
http://www.buzzoff.com/welcome/site/testimonials (emphasis added). (A copy is attached at Group Exhibit H.)
[8] *See* Press Release, Ex Officio, Ex Officio's *Incorporates* BUZZ OFF Cotton Canvas and Fleece Pullover/Hoody
Styles to Protect from Bugs and Sun (September 15, 2004) Ex Officio's Incorporates BUZZ OFF Cotton Canvas and
Fleece Pullover/HoodyStyles to Protect from Bugs and Sun, available at
http://www.exofficio.com/buzzoff/Buzzoff_press_releases.aspx (emphasis added).  (A copy is attached at Group
Exhibit I.)
[9] *See* Press Release, Ex Officio, Ex Officio Launches the Ultimate in Family Outdoor Protection with BUZZ OFF
Insect Shield Insect Repellent Apparel (August 4, 2003), Ex Officio website, available at
http://www.exofficio.com/buzzoff/Buzzoff_press_releases.aspx (additional emphasis added). (A copy is attached at
Group Exhibit I.)

- 20 -

11840041

c) "Ex Officio's innovative new BUZZ OFF apparel provides immediate protection from mosquitoes, ticks and other potentially life-threatening insects, *simply by wearing the product*."[10]

95.    The BOIS Partners also echo the BOIS website claims that directly refer to BUZZ OFF Insect Repellent Apparel reducing or eliminating the need to apply insect repellent. For example:

a) BUZZ OFF apparel "makes spray and lotion repellents obsolete."[11]

b) "Say good-bye to annoying bugs and messy sprays . . . [BUZZ OFF apparel] provides reliable, proven protection from mosquitoes. . . . Odorless and invisible . . . there's no need to keep applying messy sprays. It's as easy as putting on a pair of pants or a shirt. . . . *As long as you are wearing BUZZ OFF apparel, you're protected*. . . . Clothing that repels insects as effectively as sprays—without the mess."[12]

c) ". . . enjoy the outdoors while reducing the nuisance of applying nasty insect-repellent lotions and sprays."[13]

d) "Effective: Works like bug spray in repelling mosquitoes . . . ."[14]

e) With BUZZ OFF apparel, referred to as "The Insect Repellent Alternative," "you no longer have to reapply repellent all day long, or get bitten when sprays or liquids start to wear off and lose their effectiveness."[15]

---

[10] *See* BOIS 43, Press Release, Ex Officio, Ex Officio to Launch Children's Line of Buzz Off Insect Shield Insect Repellent Apparel in Spring 2004 (emphasis added) (attached as Group Exhibit I); *see also* Orvis website, BUZZ OFF Elephant Bush Poplin Sport Coat, available at http://www.orvis.com (select BUZZ OFF Elephant Bush Poplin Sport Coat.) (A copy is attached at Group Exhibit J.)

[11] *See* Press Release, Bass Pro Shops, New Clothing Line Keeps the Bugs Off (August 31, 2004), Bass Pro Shops website, available at http://www.basspro.com/servlet/cata
log.CFPage?appID=34&template=news_display.cfm&newsID=68. (A copy is attached at Group Exhibit J.)

[12] *See e.g.*, L.L. Bean website, BUZZ OFF Carefree Unshrinkable T-Shirt, Long-Sleeve, available at http://www.llbean.com/webapp/wcs/stores/ servlet/Category
Display?storeId=1&catalogId=1&langId=1&categoryId=40580&scl=Search&feat=sr (emphasis added.) This claim is repeated throughout the L.L. Bean website on multiple clothing pages. (A copy is attached at Group Exhibit J.)

[13] *See* Ex Officio website, BUZZ OFF FAQ's, available at http://www.exofficio.com/buzzoff /Buzzoff_FAQ.aspx. (A copy is attached at Group Exhibit J.)

[14] *See* Orvis website, Buzz Off link, available at http://www. orvis.com/intro.asp?subject=567. This claim appears on multiple pages of the Orvis website. (A copy is attached at Group Exhibit K.)

[15] *See* Orvis website, the benefits of BUZZ OFF link, available at http://www.orvis.com/intro.asp?subject=704; *see also* Orvis website, BUZZ OFF in-depth info link, available at
http://www.orvis.com/intro.asp?feature_id=1&dir_id=2204& subject=712. (A copy is attached at Group Exhibit K.)

- 21 -

11840041

f) ". . . dramatically reduce the number of insect bites without having to coat (and recoat) yourself with a spray or cream."[16]

g) BUZZ OFF apparel is "as effective as bug spray or cream," there is "[n]o need to constantly apply & re-apply repellent" and it reduces "the need for sprays or creams."[17]

96.    The BOIS Partners' websites also include testimonials, either identical or similar to those that appear on the BOIS website, that refer to the "mess" of insect repellents and/or to the ability to get complete protection using only BUZZ OFF Insect Repellent Apparel.[18]

**C.    False Claims in Catalog and Print Advertisements of the BOIS Partners**

97.    The catalog and other print advertisements of the BOIS Partners, Ex Officio and Orvis also make several claims that falsely and unambiguously communicate that, by wearing BUZZ OFF Insect Repellent Apparel, consumers can reduce or eliminate the need to apply an insect-repellent product on the skin and falsely communicate that BUZZ OFF apparel protects uncovered skin.  For example:

a) "For effective, odorless protection against biting insects . . . simply pop on this comfortable 3.4-oz. Marquesas™ cotton shirt.  Ideal with BUZZ OFF™ pants for *full protection*."[19]

b) The Orvis catalog describes hats, which don't cover the face, neck and ears, as protecting the face, neck and ears.  In copy related to the BUZZ OFF Flex-Fitting Seam Twill Cap, the catalog claims: "Help protect your

---

[16] *See* Orvis website, BUZZ OFF in-depth info link, available at http://www .orvis.com/intro.asp?feature_id=1&dir_id=2204&subject=712; *see also* Orvis website, BUZZ OFF Marquesas Popover Shirt, available at http://www.orvis.com (select BUZZ OFF Marquesas Popover Shirt) ("It [BUZZ OFF] sure beats the lotions and sprays which wear off during the day . . . . It's nice to not have to lather up with repellent.") (This claim appears on several different product pages and in the testimonials of the website).  (A copy is attached at Group Exhibit K.)

[17] *See e.g.*, Bass Pro Shops website, Bass Pro Shops® Buzz Off™ Cap, http://www.basspro.com/servlet/catalog.TextId?hvarTextId=56241&hvarTarget=search&cmCat=SearchResults. These claims appear on all Bass Pro Shops BUZZ OFF products.  (A copy is attached at Group Exhibit L.)

[18] *See e.g.*, Orvis website, Testimonials link, testimonial attributed to P. Jaffee, available at http://www.orvis. com/intro.asp?subject=702 (appears on the BOIS website); and Orvis website, Testimonials link, testimonial attributed to Gary Taylor, Owner of Go For It! Charters, and former Assistant Director of Mosquito Control for the State of Louisiana, available at http://www.orvis.com/intro.asp?subject=702 (appears on BOIS website).  (A copy is attached at Group Exhibit M.)

[19] *See* BOIS 10, Orvis Catalog (emphasis added).  (A copy is attached at Group Exhibit N.)

- 22 -

11840041

face, neck, and ears from biting insects with this BUZZ OFF twill cap ... OFF Insect Shield. . ."[20]

c) "BUZZ OFF™ gives you the protection of insect repellent spray without having to keep reapplying oily chemicals to your skin."[21]

98.    Ex Officio advertisements go so far as to claim that BUZZ OFF apparel provides a "force field" around wearers of the clothing. For example:

a) "Give yourself a bug and sun repellent force field."[22]

b) "This holiday season . . . give a bug and sun repellent force field."[23]

**D.    SC Johnson Studies Indicate that BUZZ OFF Apparel Has No Material Repellent Effect on Uncovered Skin**

99.    SC Johnson conducted laboratory chamber testing using standard methodology, and commissioned an independent expert to conduct field testing using standard methodology, to evaluate the mosquito repellent efficacy of BUZZ OFF Insect Repellent Apparel.

100.    These tests were conducted to examine whether persons wearing BUZZ OFF Insect Repellent Apparel received protection from mosquito bites on areas of the skin that were uncovered by the apparel and not treated by a topical repellent.

101.    The laboratory and field testing both evaluated four variables: (1) "untreated" clothing with legs that were not treated with a DEET repellent, (2) "untreated" clothing with DEET-treated legs, (3) BUZZ OFF apparel with legs that were not treated with a DEET repellent, and (4) BUZZ OFF apparel with DEET-treated legs.

---

[20] *See e.g.*, BOIS 12, Orvis Catalog. (A copy is attached at Group Exhibit N.)

[21] *See* BOIS 7, Ex Officio Catalog; *see also* BOIS 11, Orvis Catalog ("BUZZ OFF™ Apparel from Orvis gives you the benefits of a bug spray without . . . ever having to coat (and recoat) yourself with a spray or cream. . . . [BUZZ OFF apparel is] "as effective as bug spray . . . [n]o need to apply and reapply repellent to the skin.") (copies are attached at Group Exhibit N).

[22] *See* BOIS 46, Ex Officio Ad from Great Outdoor Provision Co., N&R, September 25, 2003. (A copy is attached at Group Exhibit N.)

[23] *See* BOIS 48, Kevin's Fine Outdoor Gear and Apparel Advertisement for BUZZ OFF Insect Shield Insect Repellent Apparel by Ex Officio. (A copy is attached at Group Exhibit N.)

11140041

102.    The results of these studies showed that irrespective of the apparel worn, the groups with legs that were *not* treated by a topical insect repellent received extensive mosquito bites, therefore demonstrating that the BUZZ OFF Insect Repellent Apparel provided no or, at most, minimal protection to adjacent untreated skin.

103.    Similarly, the results demonstrated that when subjects were treated with a topical insect repellent containing DEET, their skin had virtually complete protection from mosquito bites, regardless of whether they were wearing BUZZ OFF Insect Repellent Apparel or untreated apparel.

104.    BOIS itself, and through the BOIS Partners and BOIS Partner Affiliates, is making false and misleading statements about the efficacy and use of its products, thereby potentially affecting purchase and use of SC Johnson's OFF! products and potentially encouraging behavior which could endanger wearers' health and well-being.

**E.    False Advertising Claiming That BUZZ OFF Insect Shield Insect Repellent Apparel Contains A Version of a Natural Insecticide That Is Derived From Chrysanthemum Flowers**

105.    BOIS advertising materials contain several variations of a false claim that BUZZ OFF Insect Repellent Apparel contains a version of a natural insecticide that is derived from chrysanthemum flowers.  With these claims, BOIS is fostering confusion between pyrethrum, a natural insecticide derived from chrysanthemum flowers, with permethrin, the synthetic, molecularly-distinct active ingredient used in BUZZ OFF Insect Repellent Apparel.

106.    The following are some examples of the false claims that appear in the advertising of BOIS, BOIS Partners and companies that are, upon information and belief, BOIS Partner Affiliates:

> a) An article excerpt from the "BUZZ OFF In the News," link claims that "[t]he BUZZ OFF secret lies in its ability to bind permethrin (a man-made

- 24 -

insect repellent occurring **naturally** in chrysanthemums) to clothing," an ingredient that it describes **as "odorless and invisible."**[24]

b) "BUZZ OFF Insect Shield builds a man-made version of a centuries-old insect repellent derived **from** the chrysanthemum plant directly into your clothes."[25]

107.    This claim falsely communicates to consumers that BUZZ OFF Insect Repellent Apparel is a healthier, more natural option than traditional insect-repellent products, like those marketed under the OFF brand, which contain chemical repellents, such as DEET. This message is materially false and deceptive because permethrin is a chemical ingredient in the same way that DEET is a chemical ingredient, and permethrin is a synthetic chemical compound that is not derived from flowers. Consumers who rely on BOIS' misleading statements could be encouraged to ignore the safe storage and disposal instructions required by law to be disclosed on BUZZ OFF apparel.

## F.    False Claims that BUZZ OFF Insect Repellent Apparel is Better for the Environment and People Than Insect Repellent Sprays

108.    Advertisements by both BOIS and BOIS Partners also make the false claim that BUZZ OFF Insect Repellent Apparel is better for the environment than insect repellent sprays. These claims falsely communicate that BUZZ OFF Insect Repellent Apparel is better for the environment and people because: (1) it does not risk contaminating the atmosphere like a spray could because it is not a spray, (2) it does not risk contaminating water by washing off in showers or streams like sprays could, and (3) the apparel does not raise the same concerns for consumers as a spray because it is applied to clothing and not on the skin. These claims falsely communicate to consumers that BUZZ OFF Insect Shield's active ingredient, permethrin, is

---

[24] *See* BOIS website, BUZZ OFF In the News link, Fly Fish America Editors' Choice Awards 2004, available at http://www.buzzoff.com/welcome/site/in-the-news. (A copy is attached at Group Exhibit G.)

- 25 -

better for the environment than the active ingredient of sprays (more often than not DEET) because it does not wash off in showers or streams or risk contaminating the atmosphere. The claims also falsely communicate that permethrin is "better" for people than the active ingredient in sprays. For example:

    a) "Consumers are . . . cautious about over-using traditional insect repellents, especially those that contain DEET."[26]

    b) "The active ingredient used in the BUZZ OFF process is permethrin, a man-made version of a repellent that occurs naturally in chrysanthemums. . . . BUZZ OFF garments . . . do not risk contaminating the atmosphere like insect-repellent sprays might."[27]

    c) "It provides personal insect protection for the individual and, unlike traditional insect repellents, does not wash off in water or risk contaminating the atmosphere the way sprays could."[28]

    d) "What about other forms of insect protection? "BUZZ OFF™ apparel is the best solution for personal insect protection. Many products which must be applied to the skin have historically raised concerns particularly if misused or overused."[29]

    e) "The Environment? BUZZ OFF garments provide personal insect protection which has less environmental impact than widespread fogging or spraying of neighborhoods and is preferable to traditional insect repellents, which can wash off in the shower or stream, or sprays that might risk contaminating the atmosphere."[30]

---

[25] *See* BOIS 43, Press Release, Ex Officio, Ex Officio to Launch Children's Line of Buzz Off Insect Shield Insect Repellent Apparel in Spring 2004. (A copy is attached at Group Exhibit I.)

[26] *See* Press Release, BOIS, Insect-Repellent Apparel Registered by EPA (July 30, 2003), available at http://www.buzzoff.com/welcome/releases/release/buzz-off-insect-repellent-apparel-registered-by-epa. (A copy is attached at Group Exhibit E.)

[27] *See* Press Release, BOIS, Clothing to Hurricane Charley Victims (August 24, 2004), available at http://www.buzzoff.com/welcome/releases/release/buzz-off-insect-repellent-insect-shield-donates-clothing-to-hurricane-charl; *see also* Press Release, BOIS, Have a Bug-Free Labor Day with New Insect Repellent Clothing (August 2004), available at http://www.buzzoff.com/welcome/ releases/release/buzz-off-have-a-bug-free-labor-day-with-new-insect-repellent-clothing. (Copies are attached at Group Exhibit E.)

[28] *See* BOIS 43, Press Release, Ex Officio, Ex Officio to Launch Children's Line of Buzz Off Insect Shield Insect Repellent Apparel in Spring 2004. (A copy is attached at Group Exhibit I.)

[29] *See* Ex Officio website, BUZZ OFF FAQ's, available at http://www.exofficio.com/buzzoff/Buzzoff_FAQ.aspx. (A copy if attached at Group Exhibit J.)

[30] *See* Ex Officio website, BUZZ OFF FAQ's, available at http://www.exofficio.com/buzzoff/ Buzzoff_FAQ.aspx. (A copy is attached at Group Exhibit J.)

11840041

G.    BOIS's False Advertising Directly Conflicts with the Labels on the Apparel

109.    BUZZ OFF Insect Repellent Apparel has been on the market for about a year and a half, having been registered by the EPA in July 2003.

110.    The EPA registration of BUZZ OFF Insect Repellent Apparel requires that the product label contain specific information about how to provide insect-repellent protection for skin that is not covered by the apparel, about the "life" of the product, or the amount of "washings" for which the product is effective and care and disposal instructions.

111.    The EPA requires that all labels include the statement: "For protection of exposed skin, use in conjunction with an insect repellent registered for direct application to skin." *See* EPA Registration dated July 7, 2003 (a copy of which is attached at Exhibit O).

112.    This EPA requirement reflects EPA's recognition that the efficacy of BUZZ OFF Insect Repellent Apparel is limited to the areas of the body actually covered by the apparel, and that the product does not adequately protect uncovered skin from mosquito and other insect bites.

113.    BOIS's advertisements, however, do not contain this important public health information, and instead include statements that are plainly contrary to it.

114.    By communicating that, by using BUZZ OFF Insect Repellent Apparel consumers can reduce or eliminate the need to apply "messy" insect repellent products on the skin, the advertising is in direct conflict with EPA registration requirements.

115.    The EPA also requires the tags of BOIS to convey certain information about the product's effectiveness over time, care and disposal. It requires that labels communicate: "Repellency remains effective for 25 washings," "Wash treated garments separately from other clothing," "Do not contaminate water, food or feed by storage or disposal," and "Discard in trash

-27-

when the clothing is worn out." *See* EPA Registration dated July 7, 2003 (a copy of which is attached at Exhibit O).

116.    These requirements reflect a recognition by the EPA that active ingredient permethrin "washes off" over time with multiple washings of the product and that if the clothing is not washed separately or disposed of in a manner that puts the clothing in contact with water the active ingredient will "contaminate" other clothing or laundry that it is washed with and/or wash off into the laundry machine, or upon information and belief, other sources of water.

117.    By communicating that by using BUZZ OFF Insect Repellent Apparel consumers can avoid contaminating water, the advertising is in direct conflict with EPA registration requirements.

**H.    The Falsity of the Claims on Websites and in the Print Advertising**

118.    The BOIS website, BOIS Partner websites, websites of companies that are upon information and belief, BOIS Partner Affiliates and the BOIS Partner catalogs and other print advertisements intentionally mislead, confuse and deceive consumers by communicating that by wearing BUZZ OFF Insect Repellent Apparel consumers can reduce or eliminate the need to apply an insect-repellant product on the skin and that BUZZ OFF Insect Repellent Apparel protects uncovered skin.

119.    These claims are materially false and deceptive, and pose a significant health and safety risk to consumers because BUZZ OFF apparel does not protect adjacent, uncovered and untreated skin from mosquito bites.

120.    The BOIS website, BOIS Partner websites, websites of companies that are upon information and belief, BOIS Partner Affiliates and the BOIS Partner catalogs and other print advertisements also intentionally mislead, confuse and deceive consumers into believing that the

- 28 -

active ingredient in BUZZ OFF Insect Repellent Apparel contains a version of natural insect repellent that is derived from chrysanthemum flowers.

121.    This claim also sends a false and misleading message to the consumers that BUZZ OFF Insect Repellent Apparel is a healthier, more natural option than insect-repellent products, like those marketed under the OFF brand, which contain chemical repellents, such as DEET. This message is materially false and deceptive because the active ingredient in BUZZ OFF Insect Repellent Apparel, permethrin, is a synthetic chemical compound that is not derived from flowers.

122.    The BOIS website, BOIS Partner websites, websites of companies that are upon information and belief, BOIS Partner Affiliates and the BOIS Partner catalogs and other print advertisements intentionally mislead, confuse and deceive consumers into believing that BUZZ OFF Insect Shield's active ingredient, permethrin, is better for the environment than the active ingredient of sprays (more often than not DEET) because it does not wash off in showers or streams or risk contaminating the atmosphere. The claims also falsely communicate that permethrin is "better" for people than the active ingredient in personal repellent sprays.

123.    As a direct and proximate result of BOIS's false and misleading claims on its website, on the websites of the BOIS Partners, on the websites of the companies that are, upon information and belief BOIS Partner Affiliates and in the BOIS Partner catalogs and other print advertisements, S.C. Johnson is suffering and will continue to suffer irreparable injury for which there is no adequate remedy at law.

124.    Further, BOIS's false and misleading claims on its website, on the websites of the BOIS Partners, on the websites of the companies that are, upon information and belief BOIS Partner Affiliates and in the BOIS Partner catalogs and other print advertisements are likely to

- 29 -

have caused and will likely to continue to cause **S.C. Johnson** to suffer substantial damages, including lost sales and lost profits.

125.    Upon information and belief, BOIS's **false** and misleading claims on its website, on the websites of the BOIS Partners, on the **websites of the** companies that are, upon information and belief BOIS Partner Affiliates and **in the** BOIS Partner catalogs and other print advertisements were and are intended to mislead **and deceive** purchasers into purchasing BUZZ OFF Insect Repellent Apparel instead of S.C. Johnson's OFF! brand personal insect repellents.

126.    Upon information and belief, **the foregoing** actions of BOIS were undertaken willfully and wantonly, and with a conscious **disregard for** S.C. Johnson's rights.

127.    The foregoing acts have occurred in, **or in a** manner affecting, interstate commerce.

## VII.    CAUSES OF ACTION

## COUNT I

### TRADEMARK INFRINGEMENT
### IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1114

128.    SC Johnson realleges and incorporates by reference paragraphs 1 through 127 of the Complaint, as though set forth in full herein.

129.    Defendant's BUZZ OFF mark placed on clothing garments is substantially similar to SC Johnson's OFF! and OFF-based series of **marks** and incontestable trademark registrations, with specific references to SC Johnson's BUZZOFF and BUZZOFF and Design marks.

130.    Defendant's use of a substantially **similar** insect repellent design has created and continues to create a likelihood of confusion, **mistake** or deception as to the affiliation, connection, association, origin, sponsorship, approval, commercial activities, nature,

- 30 -

11840041

characteristics and qualities of Defendant's **goods relative** to SC Johnson's goods, in violation of the Lanham Act, 15 U.S.C. § 1114.

131.  By reason of Defendant's unlawful **actions,** SC Johnson **has suffered and** continues to suffer irreparable harm including, **but not** limited to, detriment and diminution in value of SC Johnson's OFF! and OFF-based **marks, with** specific reference to SC Johnson's BUZZOFF and BUZZOFF and Design marks, for **which there** is no adequate remedy at law. Accordingly, SC Johnson is entitled to an injunction **against** BUZZ OFF, pursuant to 15 U.S.C. § 1116.

132.  SC Johnson also has suffered **and continues** to suffer injury and is entitled to recover all damages sustained by Defendant's **actions, all** profits realized by Defendant, and costs of suit, pursuant to 15 U.S.C. § 1117.

133.  Defendant knew or had reason to **know of** SC Johnson's longstanding and widely recognized use of the OFF mark and deliberately copied **the** design. Moreover, Defendant was further aware of the BUZZOFF mark and its **recognized use.** Given that Defendant's actions were willful, deliberate and fraudulent, SC **Johnson is entitled** to treble damages and an award of reasonable attorneys' fees against BOIS, pursuant to 15 U.S.C. § 1117.

## COUNT II

### FALSE ADVERTISING
### IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(a)

134.  SC Johnson realleges and incorporates by reference paragraphs 1 through 133 of the Complaint, as though set forth in full herein.

135.  The foregoing acts of BOIS constitute false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

- 31 -

1184001

136.    This is an exceptional case within the meaning of Section 35 of the Lanham Act, 15 U.S.C. § 1117.

## COUNT III

### VIOLATION OF THE ILLINOIS CONSUMER
### FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

137.    SC Johnson realleges and incorporates by reference paragraphs 1 through 136 of the Complaint, as though set forth in full herein.

138.    The foregoing acts of BOIS constitute deceptive acts and practices and false advertising addressed to the market generally and/or in a manner that implicates consumer protection concerns in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

## COUNT IV

### VIOLATION OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT

139.    SC Johnson realleges and incorporates by reference paragraphs 1 through 138 of the Complaint, as though set forth in full herein.

140.    The foregoing acts of BOIS constitute deceptive acts and practices and false, misleading or deceptive advertising in violation of the Illinois Uniform Deceptive Trade Practices Act.

## COUNT V

### UNFAIR COMPETITION
### IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(a)

141.    SC Johnson realleges and incorporates by reference paragraphs 1 through 140 of the Complaint, as though set forth in full herein.

142.    Defendant's interstate distribution, advertising, promotion and sale of apparel utilizing its service and bearing the BUZZ OFF mark that is substantially similar to

- 32 -

1184004I

SC Johnson's OFF! and OFF-based marks, with specific reference to SC Johnson's BUZZOFF

and BUZZOFF and Design marks, constitutes unfair competition, false designation of origin and

false representations, wrongfully and falsely designating Defendant's goods as originating from

or connected with SC Johnson, and constitutes utilization of false descriptions or representations

in interstate commerce, in violation of the Lanham Act, 15 U.S.C. § 1125(a).

143.    Defendant's interstate distribution, advertising, promotion and sale of apparel

utilizing its service has created and continues to create a likelihood of confusion, mistake or

deception as to the affiliation, connection, association, origin, sponsorship, approval, commercial

activities, nature, characteristics and qualities of Defendant's goods relative to SC Johnson's

goods.

144.    By reason of Defendant's unlawful actions, SC Johnson has suffered and

continues to suffer irreparable harm including, but not limited to, detriment and diminution in

value of SC Johnson's OFF! and OFF-based marks, with specific reference to SC Johnson's

BUZZOFF and BUZZOFF and Design marks, for which there is no adequate remedy at law.

Accordingly, SC Johnson is entitled to an injunction against BUZZ OFF, pursuant to 15 U.S.C. §

1116.

145.    SC Johnson also has suffered and continues to suffer injury and is entitled to

recover all damages sustained by Defendant's actions, all profits realized by Defendant, and

costs of suit, pursuant to 15 U.S.C. § 1117.

146.    Defendant knew or had reason to know of SC Johnson's longstanding and widely

recognized use of the OFF mark, and deliberately copied this mark. Similarly, Defendant was

also aware of the BUZZ OFF mark and its recognized use in the market. Given that Defendant's

actions were willful, deliberate and fraudulent, SC Johnson is entitled to treble damages and an

award of reasonable attorneys' fees against Defendant, pursuant to 15 U.S.C. § 1117.

- 33 -

11840041

## COUNT VI

### UNJUST ENRICHMENT

147.   SC Johnson realleges and incorporates by reference paragraphs 1 through 146 of the Complaint, as though set forth in full herein.

148.   Defendant has received and continues to receive substantial profits and other benefits from its marketing, advertising, distribution and sale of BUZZ OFF Insect Repellent Apparel. Those profits and other benefits, to the extent that they have been and/or are being generated by Defendant's infringing use of SC Johnson's SC Johnson's OFF! and OFF-based marks, with specific reference to SC Johnson's BUZZOFF and BUZZOFF and Design marks, rightfully belong to and should have been received by SC Johnson.

149.   By reason of its infringing actions, Defendant has been unjustly enriched at SC Johnson's expense in an amount to be proved at trial.

150.   All profits and other benefits that have been received by Defendant from production, marketing, advertising, distribution and sale of BUZZ OFF Insect Repellent Apparel that copies and imitates SC Johnson's OFF! and OFF-based marks are now due and owing to SC Johnson.

### PRAYER FOR RELIEF

WHEREAS, Plaintiff S.C. Johnson & Son, Inc. prays for relief against Defendant BUZZ OFF Insect Shield, L.L.C. as follows:

A.   For a Permanent Injunction Order which:

1.   permanently enjoins Defendant, its officers, directors, agents, employees, attorneys, successors, licensees and assigns and all others in active concert or participation with any of them from directly or indirectly manufacturing, distributing,

- 34 -

11840041

marketing, advertising, or using in any way the OFF trademark and BUZZOFF trademark or any colorable imitation thereof in connection with insect repellent products;

    2.    orders the impoundment and destruction of all inventory of any and all kind for Defendant's goods that contain the OFF trademark or BUZZOFF trademark or any colorable variations thereof;

    3.    orders the impoundment and destruction of all advertisements and promotional materials of any and all kind for Defendant's goods that contain the OFF trademark or BUZZOFF trademark or any colorable variations thereof; and

    4.    directs Defendant to file with this Court and serve on SC Johnson within 14 days after entry of such Order, a report in writing, under oath, setting forth in detail the manner of Defendant's compliance;

B.    For a Further Permanent Injunction Order which:

    1.    permanently enjoins BOIS, its officers, agents, servants and employees, and all persons in active concert and participation with them, including the BOIS Partners, and BOIS Partner Affiliates, from further disseminating the false and deceptive advertising claims on its website or their websites, and from disseminating these or like false and deceptive advertising claims to the public in any other form or medium;

    2.    requires BOIS to disseminate among consumers corrective advertising to dispel the false and deceptive messages contained on the BOIS website, its BOIS Partner websites and the websites of the companies that are, upon information and belief, BOIS Partner Affiliates;

- 35 -

11840041

       3.      directs that BOIS account to SC Johnson for all gains, profits and

advantages derived from BOIS's wrongful acts above described;

    C.      For monetary damages sustained by SC Johnson as a result of Defendant's

unlawful conduct, including corrective advertising damages, and all profits realized, in an

amount to be proved at trial, and to be trebled or enhanced because of Defendant's willful and

deliberate activities described herein;

    D.      Directing that the aforesaid amounts be multiplied or otherwise enhanced as

authorized by law;

    E.      Directing that BOIS pay SC Johnson the costs of this action and its reasonable

attorneys' fees incurred herein; and

    F.  Granting SC Johnson such other and further relief as this Court deems just and

proper.

- 36 -

11840041

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff S. C. Johnson &

Son, Inc. hereby demands a trial by jury.

Respectfully submitted,

Dated: February 22, 2005

By: _____
One of the attorneys for Plaintiff
S. C. Johnson & Son, Inc.

James A. Klenk (ARDC No. 01482599)
Leah R. Bruno (ARDC No. 6269469)
SONNENSCHEIN NATH & ROSENTHAL LLP
8000 Sears Tower
233 S. Wacker Drive
Chicago, Illinois 60606-6404
Tel: (312) 876-8000
Fax: (312) 876-7934

Lawrence I. Weinstein (LW 0792)
Candace Sady (CS 2362)
PROSKAUER ROSE LLP
1585 Broadway
New York, New York 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

Sally L. Davis (ARDC No. 6206796)
S. C. Johnson & Son, Inc.
1525 Howe Street, MS 062
Racine, Wisconsin 53403
Tel: (262) 260-2620
Fax: (262) 260-4253

11840041

- 37 -

11840041