IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BUZZ OFF INSECT SHIELD, LLC, a<br>North Carolina limited liability company,<br>and INTERNATIONAL GARMENT<br>TECHNOLOGIES, LLC, a North Carolina<br>limited liability company, | )<br>)<br>)<br>)<br>) | |
| | ) | |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | 1:05CV363 |
| S.C. JOHNSON & SON, INC.,<br>a Wisconsin corporation, | )<br>)<br>) | |
| Defendant. | )<br>) | |

| | | |
|---|---|---|
| S.C. JOHNSON & SON, INC.,<br>a Wisconsin corporation, | )<br>)<br>) | |
| Plaintiff, | )<br>) | |
| v. | )<br>) | 1:05CV739 |
| BUZZ OFF INSECT SHIELD, LLC, a<br>North Carolina limited liability company,<br>and INTERNATIONAL GARMENT<br>TECHNOLOGIES, LLC, a North Carolina<br>limited liability company, | )<br>)<br>)<br>)<br>) | |
| | ) | |
| Defendants. | )<br>) | |

<u>ORDER AND MEMORANDUM OPINION</u>

This matter is before the Court on post-trial motions following a jury trial before this

Court. In this case, S.C. Johnson & Son, Inc. ("SCJ"), the designated Plaintiff, asserted claims

against Buzz Off Insect Shield, LLC and International Garment Technologies, LLC (collectively,

"BOIS") for (1) trademark infringement under the Lanham Act, 15 U.S.C. §§ 1114(a), 1125(a);

(2) false advertising under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and (3) unfair and deceptive trade practices under state law. All of these claims relate to consumer apparel treated by BOIS in a process that binds permethrin, an insect repellant, to apparel manufactured by third parties such as Orvis, Ex Officio and L.L. Bean. BOIS treats the apparel and then returns it to the originating manufacturers for sale through the manufacturer's retail channels. During the time leading up to the present suit, the products treated using BOIS's permethrin treatment process bore the clothing manufacturer's mark and a "BUZZ OFF" mark used by BOIS.

In its trademark infringement claim in this case, SCJ alleged that BOIS's use of the mark "BUZZ OFF" for garments treated using BOIS's permethrin treatment process (referred to hereinafter as "BOIS Apparel") infringed both (1) SCJ's registered OFF! mark and (2) an unregistered "BuzzOff" mark and trade name that was used by Maryed International, Inc. (referred to hereinafter as the "Maryed mark") for garments made of fine mesh netting (referred to hereinafter as "Maryed netwear"). This mark is displayed graphically as a bee design with the word "buzz" written out and the word "off" representing the body and wings of the bee for products sold as "Buzz Off Outdoor Wear." Prior to the initiation of this lawsuit, BOIS and Maryed engaged in some negotiations regarding a possible business relationship, including assignment of the Maryed mark to BOIS. However, negotiations broke down and after several years, Maryed assigned to SCJ all of the rights to the Maryed mark, together with the goodwill of the business connected with the Maryed mark, as well as all claims for damages for past infringement of the Maryed mark. SCJ licensed the mark back to Maryed for continued use in connection with the sale of Maryed netwear, and then brought the present action for trademark

2

infringement based on BOIS's use of the "BUZZ OFF" mark. With respect to the false advertising claim in this case, SCJ alleged that BOIS's advertising for the BOIS Apparel, both directly and through its third party partners, was false and misleading in multiple ways, particularly regarding the extent of the insect protection that BOIS Apparel provides. Finally, with respect to the state law claim for unfair and deceptive trade practices in this case, SCJ asserted claims under state law based on both the alleged trademark infringement and the alleged false advertising.

SCJ initially filed its action in the Northern District of Illinois, and BOIS filed a separate action in this district seeking a declaratory judgment on the same issues. The Illinois case was transferred to this district and the cases were consolidated. Prior to trial, the Court adopted the Recommendation of the Magistrate Judge with respect to the parties' cross motions for summary judgment. As part of the summary judgment determination, the Court dismissed SCJ's claim that the BOIS mark infringes the OFF! mark, but the Court allowed SCJ's trademark infringement claim to proceed with respect to the alleged infringement of the Maryed mark. The Court also allowed SCJ's claims for false advertising and unfair and deceptive trade practices to proceed to trial. Following a four week jury trial, the jury returned a verdict in favor of BOIS on the claim for false advertising, finding no false or deceptive advertising by BOIS. However, with respect to SCJ's claim for trademark infringement as to the Maryed mark, the jury found in favor of SCJ, concluding that the Maryed mark was a valid mark containing the words "BuzzOff," that BOIS infringed the mark, and that the infringement was willful. On this trademark infringement claim, the jury awarded SCJ damages of $280,000.00. Finally, with

3

respect to the state law claims, the jury found in favor of BOIS, finding no false advertising by BOIS to support a state law claim for unfair and deceptive trade practices based on false advertising, and further finding that any intentional trademark infringement by BOIS was not the proximate cause of injury to SCJ to support a claim under state law for unfair and deceptive trade practices.

Both parties have filed post-trial motions with respect to the jury's verdict, including (1) a motion by SCJ for a new trial on the false advertising claims [Doc. #312]; (2) a motion by BOIS for judgment as a matter of law on the trademark infringement claim [Doc. #295] and for judgment as a matter of law with respect to the jury's determination of willfulness on the trademark infringement claim [Doc. #297]; a motion by BOIS to reduce the damages award [Doc. #299], a motion by SCJ to enhance the damages award [Doc. #301], and a conditional motion for a new trial by BOIS [Doc. #311]. SCJ has also filed a Motion for a nationwide injunction based on the jury's finding of infringement [Doc. #316]. In addition, SCJ has filed a motion for attorneys' fees under the Lanham Act with respect to the attorneys' fees SCJ incurred in bringing the trademark infringement claim [Doc. #318], as well as a motion for prejudgment interest under the Lanham Act [Doc. #314], and a motion for attorneys' fees and expenses based on BOIS's failure to admit certain Requests for Admissions [Doc. #306]. Finally, BOIS has filed a motion for attorneys' fees under the Lanham Act [Doc. #304] for fees BOIS incurred in defending the false advertising and state law claims. The Court will consider each of these motions below. Given the number and scope of the Court's prior rulings in this case both prior to and during the trial, as well as the extent of the evidence presented during

4

trial, the Court will not restate here all of the Court's previous holdings in this case or all of the evidence presented during the four week trial in this case, and will instead include only the findings and conclusions necessary for the Court's holdings here, based on all of the evidence presented at trial.

## I. SCJ's Motion for a New Trial Based on its False Advertising Claims and Dismissal of the Unclean Hands Defense [Document #312]

With respect to the jury's verdict on the false advertising claims in this case, the Court notes that the jury, on the verdict sheet, was asked to consider whether SCJ had established that BOIS engaged in false advertising as to four categories of advertising claims. If the jury found that BOIS had engaged in false advertising as to any of those categories of advertising claims, the jury was instructed to then consider BOIS's "unclean hands" defense, specifically whether BOIS had proved that SCJ had itself engaged in the same false advertising challenged in this action. The jury by its verdict found that BOIS had not engaged in any false advertising. Based on that determination, the jury did not reach the issue of whether BOIS could assert a defense to the false advertising claim based on alleged "unclean hands" by SCJ.

In its Motion for a New Trial Based on its False Advertising Claims and Dismissal of the Unclean Hands Defense [Document #312], SCJ asks for a new trial at which it can retry its claim against BOIS for false advertising, and further contends that prior to the new trial, BOIS's defense of "unclean hands" should be dismissed. In support of this Motion, SCJ contends that a new trial is warranted because (1) the Court improperly excluded certain of SCJ's evidence related to the false advertising claim; (2) the unclean hands defense was improperly submitted to the jury and the failure to dismiss the defense prior to trial allowed the jury to hear evidence

5

regarding SCJ that may have impacted the verdict on the false advertising claim; (3) the jury was improperly allowed to consider BOIS's EPA registration in evaluating the false advertising claim; and (4) the verdict was against the clear weight of the evidence, particularly with respect to BOIS's advertising regarding the protection BOIS Apparel provides to exposed skin.

In considering a motion for a new trial, the Court may weigh the evidence presented during the trial and may consider the credibility of the witnesses in order to determine if the verdict is against the clear weight of the evidence, is based on false evidence, or will result in a miscarriage of justice. See Fed. R. Civ. P. 59(a)(1); Chesapeake Paper Prods. Co. v. Stone & Webster Engineering Corp., 51 F.3d 1229, 1237 (4th Cir. 1995); Poynter v. Ratcliff, 874 F.2d 219, 222-223 (4th Cir. 1989). In addition, a motion for a new trial may "raise questions of law arising out of alleged substantial errors in admission or rejection of evidence." Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251, 61 S. Ct. 189, 85 L. Ed. 147 (1940). However, Federal Rule of Civil Procedure 61 provides that "[u]nless justice requires otherwise, no error in admitting or excluding evidence – or any other error by the court or a party – is ground for granting a new trial . . . . At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."

In considering SCJ's contentions in the present Motion for New Trial, the Court notes first that most of SCJ's contentions in this Motion ask this Court to reconsider its prior evidentiary rulings in this case, which the Court is not inclined or persuaded to do here. For example, with respect to SCJ's first contention that a new trial is warranted because the Court excluded certain of SCJ's evidence related to the false advertising claim, the Court notes that

6

prior to and during trial in this case, the Court made many evidentiary rulings that were further set out in open court and in the Court's rulings on the parties' Motions in Limine, and SCJ has not presented any basis for reconsideration of those prior decisions. Moreover, even if there were a basis to reconsider those decisions, SCJ has not established that these evidentiary determinations caused substantial harm or would otherwise entitle SCJ to a new trial on the false advertising claims. Similarly with respect to SCJ's second contention that a new trial is warranted because the "unclean hands" defense was improperly submitted to the jury, the Court notes that as part of the summary judgment ruling in this case, the Court determined that a sufficient basis existed to allow the "unclean hands" defense to be presented to the jury, and in accordance with that determination, certain evidence was presented at trial in support of that defense. After the evidence was presented at trial, the Court concluded that a sufficient basis existed to allow the submission of this defense to the jury. SCJ has not presented any basis for reconsideration of these determinations. Moreover, because the jury found that BOIS had not engaged in false advertising, the jury did not even reach the "unclean hands" defense, and SCJ has not shown that the presentation of evidence related to the defense or the submission of the defense to the jury caused substantial harm or otherwise warrants a new trial in this case. Likewise with respect to SCJ's third contention that a new trial is warranted based on the jury's consideration of BOIS's EPA registration, the Court notes that this issue was addressed by the Court in ruling on SCJ's Motions in Limine and during the trial in this case, and the jury was instructed that they could consider the scope of BOIS's EPA registration in evaluating the false advertising claim. SCJ has not presented any basis for the Court to reconsider its evidentiary determinations or its

7

instruction to the jury on this issue.  Moreover, SCJ has not shown that the use of this evidence or instruction caused prejudice to SCJ or amounted to "false evidence" or would otherwise warrant a new trial on this claim.

Finally, the Court notes that with respect to SCJ's fourth contention that a new trial is warranted because the jury's verdict was against the clear weight of the evidence, the Court has considered the evidence presented on the false advertising claim during the trial and has weighed the evidence presented.  This evidence included conflicting expert reports and testimony that raised significant issues regarding what BOIS had advertised, how consumers perceived the advertising, and whether the advertising was false or misleading.  Weighing all of the evidence and the credibility of the witnesses, the Court concludes that the jury's verdict with respect to SCJ's false advertising claim is not against the clear weight of the evidence and does not result in a miscarriage of justice, and in fact is a reasonable, well-supported conclusion based on the evidence presented at trial.  Moreover, the Court further concludes that even if the Court gave SCJ the benefit of all of the evidentiary objections and contentions set out in the Motion for a New Trial, the Court would nevertheless find that a verdict in favor of BOIS on the false advertising claim would not be against the clear weight of the evidence.

Having considered all of the contentions raised by SCJ in its Motion for a New Trial, the Court concludes that the jury's verdict was not against the clear weight of the evidence, was not based on false evidence, and will not result in a miscarriage of justice.  See Fed. R. Civ. P. 59(a)(1); Chesapeake Paper Prods., 51 F.3d at 1237.  SCJ's Motion for a New Trial with respect to the False Advertising Claim and Unclean Hands Defense [Doc. #312] will therefore be

8

denied, and consistent with the jury's verdict, judgment will be entered in favor of BOIS on this claim.

## II. BOIS's Motions for Judgment as a Matter of Law on Trademark Claim [Doc. #295, #297]

Turning to the trademark infringement claim, the Court notes that the jury found in favor of SCJ on this claim, concluding that SCJ possessed a valid, protectable mark acquired from Maryed International, that the mark contained the words "BuzzOff," and that BOIS infringed the mark. BOIS has filed a Motion for Judgment as a Matter of Law with respect to the trademark infringement claim [Doc. #295], contending that SCJ did not present sufficient evidence in support of its claim, that the Maryed mark is merely descriptive, that SCJ did not establish valid common law trademark rights in the mark, that there is no likelihood of confusion between the Maryed mark and BOIS's mark, that Maryed abandoned its rights by assigning the mark to SCJ "in gross," that SCJ abandoned its rights by granting a "naked license" back to Maryed, that neither Maryed nor SCJ was injured by the infringement, and that SCJ is barred from asserting this claim by the doctrines of laches and acquiescence. The Court will consider all of these contentions in turn with respect to BOIS's Motion for Judgment as a Matter of Law on the Trademark Claim.

Under Federal Rule of Civil Procedure 50, "[j]udgment as a matter of law is appropriate when there is no legally sufficient evidentiary basis to support the jury's verdict." Private Mortg. Inv. Services, Inc. v. Hotel and Club Assocs., Inc., 296 F.3d 308, 312 (4th Cir. 2002). A motion for judgment as a matter of law should be granted if the jury's findings are not supported by substantial evidence, viewing all the evidence in the light most favorable to the prevailing party

9

and drawing all reasonable inferences in favor of the prevailing party.  Konkel v. Bob Evans Farms Inc., 165 F.3d 275, 279 (4th Cir. 1999); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149-50, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

In the present case, the court has considered BOIS's contentions and concludes that substantial evidence was presented from which a reasonable jury could have found either for or against SCJ on the trademark infringement claim, and the Court will not substitute its view for that of the jury in this case.  In that regard, it is clear that the jury found that SCJ possessed common law rights in a valid, protectable trademark acquired from Maryed International, and substantial evidence was presented to support this conclusion, including evidence that the mark was suggestive and thus inherently distinctive, not simply descriptive.  There was also evidence from which the jury could have found that the mark was used nationwide in commerce beyond de minimis amounts to establish valid common law rights in the mark.  In addition, substantial evidence was presented to support the jury's finding that the Maryed mark contained the term "BuzzOff" and that there existed a likelihood of confusion between the BOIS mark and the Maryed mark, specifically "reverse confusion," which occurs when a junior user such as BOIS overwhelms the market with the use of a confusingly similar mark that usurps the value of a senior user's mark, in this case, the Maryed mark.

The jury also determined that SCJ had not abandoned the mark by granting a "naked license" to Maryed, that  SCJ and Maryed did not unreasonably delay in challenging BOIS's use of the mark, and that neither Maryed nor SCJ explicitly or impliedly consented to BOIS's use of the mark.  Because substantial evidence was presented to support these determinations, BOIS

10

is not entitled to judgment as a matter of law on its naked license defense or its laches or acquiescence defenses. As to BOIS's contention that Maryed abandoned its rights by making an "in gross" assignment of the mark to SCJ, this issue was addressed and resolved in the summary judgment Recommendation adopted by this Court before trial, and BOIS has not presented any basis to revisit that prior determination. Likewise with respect to BOIS's contention that Maryed's use of the mark was "unlawful," the Court addressed this issue in ruling on the Motions in Limine prior trial, (see Doc. #251 at 13-14), and sufficient evidence was presented at trial to support the jury's determination that Maryed's use of the mark created common law rights and was not unlawful.

Finally, the Court notes that to the extent BOIS contends that SCJ failed to establish any sufficient "injury" to SCJ or Maryed to support an award of damages or an injunction on the trademark infringement claim, the Court will consider those contentions separately below in addressing the parties' post-trial motions directed specifically to the propriety of the damages award and SCJ's request for an injunction (see Sections III, IV and VIII). However, those contentions do not affect the Court's conclusion that sufficient evidence was presented to support the jury's liability determination on the trademark infringement claim, as well as the jury's rejection of BOIS's affirmative defenses on that claim. Cf. Web Printing Controls Co., Inc. v. Oxy-Dry Corp., 906 F.2d 1202 (7th Cir. 1990) (noting that an "actual injury" is relevant to the award of damages under the Lanham Act but is not an element necessary to establish a violation of the Lanham Act).

Having considered all of the contentions raised by BOIS in its Motion for Judgment as

a Matter of Law on the Trademark Infringement Claim, the Court concludes that although reasonable minds could differ as to the conclusions to be drawn from the evidence presented, there was sufficient evidence presented to support the jury's verdict in this case. Because the jury's verdict in favor of SCJ on the trademark infringement claim is supported by substantial evidence, BOIS's Motion for Judgment as a Matter of Law on the Trademark Infringement Claim [Doc. #295] will be denied.[1]

In addition to the Motion addressed above, the Court notes that BOIS has also moved for Judgment as a Matter of Law with respect to the jury's finding of willfulness on the trademark infringement claim [Doc. #297]. In this regard, the Court notes that the jury, by special interrogatory, found that BOIS's infringement of the Maryed mark was "willful and intentional." In its Motion for Judgment as a Matter of Law, BOIS contends that the evidence in the record does not support a finding of willful trademark infringement in this case.

As a preliminary matter, SCJ contends that this Motion is procedurally barred under Rule 50 because BOIS did not specifically list this "willfulness" issue as part of its basis for judgment as a matter of law under Rule 50(a) at the close of SCJ's evidence. However, the Court concludes that this "willfulness" issue was sufficiently raised in BOIS's Rule 50(a) motion at the close of SCJ's evidence, and that BOIS's Rule 50(a) motion and arguments at trial were adequate

---

[1] The Court further notes that BOIS has not made a specific motion for a new trial on this claim, but has filed a general "Motion for New Trial" [Doc. #311]. To the extent BOIS contends that it might be entitled to a new trial on this claim, the Court has weighed the evidence and considered the testimony presented and concludes that the jury's verdict on the trademark infringement claim is not against the clear weight of the evidence, is not based on false evidence, and will not result in a miscarriage of justice, for all of the reasons discussed above. Therefore, to the extent BOIS may be moving for a new trial on this claim, that motion will be denied also.

to put SCJ and the Court on notice as to BOIS's contentions on this issue. Under these circumstances, the purposes of Rule 50 have been met, and the Court will not impose a more formal requirement for Rule 50(a) or otherwise find the present Motion to be procedurally barred. See Federal Sav. & Loan Ins. Corp. v. Reeves, 816 F.2d 130, 137-38 (4th Cir. 1987); Singer v. Dungan, 45 F.3d 823, 829 (4th Cir. 1995).

Turning to the substance of the Motion for Judgment as a Matter of Law as to Willfulness, the Court notes again that "[j]udgment as a matter of law is appropriate when there is no legally sufficient evidentiary basis to support the jury's verdict." Private Mortg. Inv. Services, Inc. v. Hotel and Club Assocs., Inc., 296 F.3d at 312; Fed. R. Civ. P. 50. Applying this standard, BOIS contends that there is no evidence in the record to support the jury's finding of willfulness on the trademark infringement claim in this case.

The jury in this case was instructed that an infringement is "willful" if it is done deliberately and on purpose, knowing it was an infringement. BOIS does not now contest the instruction that was given to the jury. Instead, BOIS contends that the evidence does not support such a finding. However, the evidence in this case was sufficient to support a jury finding that BOIS knew of the Maryed mark and nevertheless deliberately used a confusingly similar mark, knowing that the use was infringing. BOIS contends that it did not "know" its use of the mark was infringing because it reasonably doubted the validity of the Maryed mark and did not believe any likelihood of confusion existed between the BOIS mark and the Maryed mark. However, sufficient evidence was presented at trial from which the jury could have concluded that BOIS was aware of the Maryed mark, that BOIS tried to obtain rights to the

13

Maryed mark because BOIS believed the Maryed mark was valid, that BOIS attempted to obtain an assignment of rights to the Maryed mark without consideration, that BOIS knew that Maryed objected to BOIS's mark based on potential consumer confusion, that BOIS knew there was a likelihood of confusion between the Maryed mark and BOIS's mark, and that BOIS nevertheless deliberately infringed the Maryed mark rather than change its own mark after negotiations with Maryed broke down. Cf. W. E. Bassett Co. v. Revlon, Inc., 435 F.2d 656 (2d Cir. 1970). Sufficient evidence was presented at trial from which a reasonable jury could make these findings and could conclude that the trademark infringement in this case was willful and intentional. Because there is substantial evidence to support the jury's verdict, BOIS's Motion for Judgment as a Matter of Law on the Willfulness Determination [Doc. #297] will be denied.[2] The Court notes, however, that the Court's ruling in this instance is not dispositive as to the appropriate remedy available to SCJ in this case. The jury's finding on willfulness will simply be considered by the Court as relevant evidence in evaluating the parties' post-trial motions related to the propriety of the damage award in this case.

---

[2] The Court notes that in a footnote, BOIS alternatively asserts Rule 59(e) as a basis for its Motion. However, BOIS has not stated the basis for asserting a motion under Rule 59(e), nor has BOIS shown any intervening change in controlling law, any new evidence not available at trial, or any clear error of law or manifest injustice. See Ingle v. Yelton, 439 F.3d 191, 197 (4th Cir. 2006) (discussing Rule 59(e) standard). Therefore, to the extent BOIS has alternatively brought its Motion pursuant to Rule 59(e), that motion would also be denied. In addition, the Court further notes that BOIS has not made a specific motion for a new trial on this willfulness issue, but has filed a general "Motion for New Trial" [Doc. #311]. To the extent BOIS contends that it might be entitled to a new trial on the willfulness determination, the Court has weighed the evidence and considered the testimony presented and concludes that the jury's determination of willfulness is not against the clear weight of the evidence, is not based on false evidence, and will not result in a miscarriage of justice, for all of the reasons discussed above. Therefore, to the extent BOIS may be moving for a new trial on this issue, that motion will be denied.

### III. BOIS's Motion for Judgment as a Matter of Law and to Alter or Amend the Judgment as to Damages [Document #299]

After finding in favor of SCJ on the trademark infringement claim, the jury awarded SCJ $280,000.00 as "actual damages it incurred as a result of Defendants' trademark infringement," and "0" as the amount SCJ could recover "as the profits that Defendants earned as a result of Defendants' trademark infringement." In addition, with respect to the state law claims for unfair or deceptive trade practices, the jury found that BOIS intentionally infringed SCJ's rights to the Maryed mark, but the jury further found that Defendants' conduct was not a "proximate cause of injury" to SCJ under state law, and therefore the jury did not award any damages to SCJ on the state law claim.

BOIS has filed a Motion for Judgment as a Matter of Law and to Alter or Amend the Judgment as to Damages [Document #299] asking the Court to strike the jury's $280,000.00 damage award in this case. In support of this Motion, BOIS contends that (1) SCJ has failed to prove that it suffered any actual harm and therefore is not entitled to any actual damages; (2) that the jury's proximate cause determination on the state law claim precludes any recovery of actual damages on the federal trademark infringement claim; (3) that the award of actual damages would represent an improper penalty; and (4) that Maryed's delay in seeking to enforce its trademark rights weighs against an award of damages.

As a preliminary matter, SCJ again contends that this Motion is procedurally barred under Rule 50 because BOIS did not specifically request judgment as a matter of law on the issue of damages at the close of SCJ's evidence. However, BOIS's Rule 50(a) motion at the close of SCJ's evidence included over three pages of argument and analysis addressing whether SCJ had

established any injury to SCJ or Maryed, and contending that BOIS was entitled to judgment as a matter of law because SCJ could not recover damages, profits, injunctive relief or a reasonable royalty. BOIS's Rule 50(a) motion and trial contentions were sufficient to satisfy Rule 50, and the Court concludes the BOIS's current Motion for Judgment as a Matter of Law is not barred as a procedural matter.

Turning to the substance of the current motion, to the extent that BOIS seeks judgment as a matter of law on damages, BOIS must establish that "there is no legally sufficient evidentiary basis to support the jury's verdict," viewing the evidence in the light most favorable to SCJ. Private Mortg. Inv. Services, Inc. v. Hotel and Club Assocs., Inc., 296 F.3d at 312; Fed. R. Civ. P. 50. To the extent that BOIS seeks to alter or amend the judgment on damages, BOIS must establish an intervening change in controlling law, new evidence not available at trial, or a clear error of law or manifest injustice. See Ingle v. Yelton, 439 F.3d 191, 197 (4th Cir. 2006) (discussing Rule 59(e) standard).

Under 15 U.S.C. § 1117(a), when trademark infringement has been established under section 1125(a), as in the present case, the plaintiff is entitled "subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction." 15 U.S.C. § 1117(a). Damages are typically measured by direct injury which a plaintiff can prove, including lost profits the plaintiff would have earned but for the infringement. However, because proof of actual damages may be difficult, a plaintiff may alternatively recover damages on the theory of unjust enrichment to the defendant, often

measured as the defendant's profits earned as a result of the infringement. See Lindy Pen Co., Inc. v. Bic Pen Corp., 982 F.2d 1400, 1407 (9th Cir. 1993). In addition, courts have recognized that where damages are difficult to measure, an appropriate measure of damages includes an "approximation of the royalties" the defendant would have had to pay, "had it recognized the validity of [the plaintiff's] claims." Sands, Taylor & Wood Co. v. Quaker Oats Co., 978 F.2d 947, 963 (7th Cir. 1992) (noting also that the reasonable royalty should be used as a starting point in determining an appropriate award, and instructing the court to also "take into account the possible need for deterrence, which may involve consideration of the amount of [the defendant's] profits."); see American Farm Bureau Fed'n v. Alabama Farmers Fed'n, 935 F. Supp. 1533, 1549 (M.D. Ala. 1996) ("[S]eparate from the more traditional damages such as lost sales or declining reputation, trademark infringement deprives the mark's owner of the economic benefit of controlling and licensing the right to use the mark."); see also Shell Oil Co. v. Commercial Petroleum, Inc., 928 F.2d 104, 108 (4th Cir. 1991) (noting that for violations of the Lanham Act, "the court has broad discretion to award any monetary relief necessary to serve the interests of justice"). Consistent with these legal rules, both parties in the present case presented expert evidence regarding the propriety and amount of a reasonable royalty in this case, and the Court instructed the jury, without objection by BOIS, that in calculating actual damages, the jury could, as an alternative, consider a reasonable royalty amount. The jury ultimately awarded $280,000.00 to compensate SCJ for BOIS's willful infringement.

In its Motion seeking to strike the $280,000.00 damage award in the present case, BOIS first contends that SCJ is not entitled to any award of damages because SCJ has failed to prove

17

any "actual injury," since SCJ has not established that buyers who wished to purchase Maryed's netwear products were misled into buying BOIS Apparel instead. However, the trademark infringement presented in this case involved "reverse confusion." "[R]everse confusion protects 'smaller senior users . . . against larger, more powerful companies who want to use identical or confusingly similar trademarks.' . . . Absent reverse confusion, 'a company with a well established trade name and with the economic power to advertise extensively [would be immunized from suit] for a product name taken from a competitor.'" A& H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 228 (3d Cir. 2000) (quoting Fisons Horticulture, Inc. v. Vigoro Industries, Inc., 30 F.3d 466, 475 (3d Cir. 1994); Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co., 561 F.2d 1365, 1372 (10th Cir. 1977)). Under this "reverse confusion" doctrine, the injury to Maryed and SCJ was based on BOIS's extensive use of a mark that infringed upon and overwhelmed Maryed's prior, senior use of its mark, creating a likelihood of consumer confusion, even if there were no consumers who were misled into buying BOIS Apparel when they really wished to purchase Maryed's netwear products instead.

Having reviewed the evidence presented and BOIS's contentions, the Court concludes that SCJ presented sufficient evidence from which the jury could find that SCJ and Maryed were injured as a result of BOIS's infringement in this case, under a theory of "reverse confusion" and loss to Maryed and SCJ of the value of the Maryed mark which impaired the ability of Maryed and SCJ to continue use of the mark for the Maryed netwear products. Based on the evidence presented, the jury in this case reasonably concluded that SCJ and Maryed should be compensated for BOIS's willful infringement. With regard to the specific measure of damages,

18

conflicting evidence and arguments were presented at trial regarding the proper measure of damages on this claim. The evidence presented at trial included expert opinion evidence to establish that a reasonable royalty amount in this case would be in the range of $213,518.00 (based on the testimony of BOIS damages expert Mr. Charles Phillips) or $533,978.00 (based on the testimony of SCJ damages expert Mr. Aron Levko), and SCJ argued during closing that a reasonable royalty would be some amount between those two figures. Thus, the jury's award of $280,000.00 in damages was within the range of the expert opinion presented in this case on the issue of damages, and consistent with the Court's instructions, could have been awarded by the jury as a reasonable royalty "as an alternative to actual damages."

With respect to the amount of damages awarded, BOIS also contends that the jury improperly calculated damages by considering the total amount that SCJ agreed to pay to Maryed in exchange for the assignment of the Maryed mark and associated business goodwill, which was $275,000.00. However, the Court concludes that there was independent, unrelated evidence to support the jury's verdict as a "reasonable royalty," based on the expert opinions presented. Moreover, even if the jury did consider the amount of money paid by SCJ to Maryed in exchange for the assignment of the Maryed mark and associated business goodwill, such a reference simply provided additional evidence regarding the value of the trademark that was appropriated and the potential amount of compensation due to SCJ for BOIS's infringement of the mark. The jury weighed the evidence and awarded SCJ damages of $280,000.00, which is supported by the evidence and which represents a reasonable, equitable, well-supported

19

determination of damages for the willful infringement found by the jury in this case.[3]

BOIS in its Motion next contends that damages may not be awarded on the Lanham Act trademark infringement claim because as part of the determination of the state law unfair competition claim, the jury found that BOIS's conduct was not a proximate cause of injury to SCJ. However, with respect to this contention, the Court notes first that even if the Court were to accept BOIS's position that the jury determination is somehow inconsistent in this regard, the remedy for this alleged error would be a new trial, not judgment as a matter of law or amendment of the judgment as to damages, which is what BOIS seeks here. Moreover, the Court concludes in any event that there is no inconsistency or apparent error in the jury's verdict, since a monetary award under the Lanham Act is distinct from damages under the North Carolina Unfair and Deceptive Trade Practices Act. For example, under the Court's instructions, the jury could have awarded the $280,000.00 to SCJ under the Lanham Act for a reasonable royalty as an alternative to actual damages, but still concluded that BOIS's conduct had not proximately caused an actual injury to SCJ under state law. Thus, the jury's verdict is not necessarily inconsistent, and the Court will reconcile and uphold the jury's verdict if possible. See Atlas Food Systems and Services, Inc. v. Crane Nat. Vendors, Inc., 99 F.3d 587, 598-99 (4th Cir. 1996) (noting that courts must "harmonize seemingly inconsistent verdicts if there is any reasonable way to do so"). Therefore, the Court concludes that the jury's determinations with

---

[3] The Court notes that the Fourth Circuit has identified various factors for courts to consider in making a damages award under the Lanham Act. See Synergistic Int'l, LLC v. Korman, 470 F.3d 162 (4th Cir. 2006). This Court has evaluated the jury's award in the present case in light of these factors as part of the Court's analysis of SCJ's motions for enhanced damages in Part IV below.

respect to the state law claim do not require the Court to overturn the jury's award of damages on the Lanham Act claim.

BOIS next contends that the award of damages in this case does not represent actual damages and instead represents an improper penalty. However, the Court has found above that the jury's award of $280,000.00 is supported by the evidence and represents a reasonable, equitable, well-supported determination of damages for the willful infringement found by the jury in this case. In considering whether to impose enhanced damages or other costs, the Court will consider below in greater detail all of the relevant equitable factors, including the need to avoid imposing damages that would result in an improper "penalty" against BOIS. However, the Court finds that jury's verdict itself is supported by the evidence and is a proper damages award and not a penalty.

Finally, BOIS contends that delay by Maryed in seeking judicial relief would weigh against an award of damages. In this regard, the Court notes that the jury found that BOIS had failed to establish either laches or acquiescence defenses that would have barred SCJ's claim. The Court nevertheless accepts BOIS's contention that the timing of events leading up to the filing of the present lawsuit, including any alleged delay by Maryed in seeking judicial relief, could be considered in evaluating a damages award. Therefore, the Court will consider this contention below in considering the appropriateness of the ultimate award in this case as part of SCJ's request for enhanced damages. However, even considering the alleged delay by Maryed, the Court nevertheless finds that the jury's award of $280,000.00 is supported by the evidence and is not excessive or a miscarriage of justice, and any delay by Maryed was not so unreasonable as

21

to bar any recovery and entitle BOIS to judgment as a matter of law or an amended judgment on damages as BOIS contends.

Having considered all of the contentions raised by BOIS in its Motion for Judgment as a Matter of Law and to Alter or Amend the Judgment as to Damages, the Court concludes that the jury's award of damages of $280,000.00 for the willful trademark infringement found in this case is supported by substantial evidence and represents a reasonable, well-supported determination on the appropriate amount of damages in this case. The damages award is not against the clear weight of the evidence, does not represent a clear error of law, and does not result in manifest injustice. This appropriateness of the award is analyzed further below with respect to SCJ's Motion for enhanced damages, but based on the evidence presented, the Court finds no basis to overturn the jury's damage award, and BOIS's Motion for Judgment as a Matter of Law and to Alter or Amend Judgment as to Damages [Doc. #299] will be denied.

## IV. SCJ's Motion for Enhanced Damages on Trademark Infringement Claim [Doc. #301]

Based on the jury's finding of willful infringement and award of $280,000.00 in damages, SCJ filed a Motion for Enhanced Damages on the Trademark Infringement Claim [Doc. #301], asking that the $280,000.00 award be trebled to $840,000.00. Under 15 U.S.C. § 1117, "[i]n assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above

circumstances shall constitute compensation and not a penalty."

In its Motion, SCJ contends that the $280,000.00 award represents actual damages and should be trebled by the Court in its discretion, or should be increased as "inadequate" under the circumstances of the case. In support of this contention, SCJ primarily contends that BOIS acted willfully and in bad faith, and that enhanced damages are therefore appropriate. In response, BOIS contends that no "actual damages" were established, and to the extent that the jury's award may have been based on a reasonable royalty determination, that award is not subject to trebling as "actual damages." BOIS further contends that it did not act in bad faith, and that the jury's finding of willfulness, even if accepted, does not compel an award of any enhanced damages.

In considering the propriety of the jury's award of damages, and the potential enhancement of that award, the Court is guided by the factors identified by the Fourth Circuit for making a damages award under the Lanham Act: "(1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off." Synergistic Int'l LLC v. Korman, 470 F.3d 162, 175 (4th Cir. 2006). As discussed above, the Court has concluded that the jury's $280,000.00 damages award in this case is supported by the evidence, based on a "reasonable royalty" determination. However, given the parties' conflicting contentions regarding the appropriateness of the jury award and potential enhancements to that award under § 1117, the Court concludes that it is appropriate to consider all of these Synergistic factors with

respect to determining the proper amount of an award in the present case.

First, with respect to whether BOIS had the intent to confuse or deceive, the jury in this case found the BOIS willfully infringed the Maryed mark, and the Court has concluded above that the evidence could support a determination either way on this issue, and therefore the jury's determination on this issue will not be disturbed. The Court therefore accepts this jury finding of willfulness and weighs this factor in favor of SCJ in determining the appropriate award of damages in this case. However, the Court nevertheless concludes that even if BOIS willfully infringed the Maryed mark, BOIS did not act fraudulently or in bad faith, based on the evidence presented. Specifically, even accepting the jury's determination of willfulness, the Court nevertheless finds that BOIS originally selected its mark without any intent to trade on Maryed's goodwill, and without bad faith or an intent to commit fraud on the public. Although BOIS did continue to develop its business under the "BUZZ OFF" mark even after learning of the Maryed mark, BOIS did not attempt to intentionally confuse consumers into purchasing its products instead of Maryed's products, nor did BOIS act with malice toward Maryed or otherwise engage in fraudulent conduct. Therefore, although this factor weighs in favor of SCJ in considering damages, the conduct by BOIS in this case is not so fraudulent, malicious, or deceptive, compared to other trademark infringement cases, to weigh heavily in favor of an enhancement to the damages awarded in the present case.

With respect to the second _Synergistic_ factor, diversion of sales, the Court finds that there is no evidence that any potential Maryed sales were actually diverted to BOIS, and Maryed had already begun to reduce its operations prior to BOIS's entry into the market. However, the

Court nevertheless finds that Maryed, as SCJ's predecessor-in-interest and licensee, may have lost some potential market presence as a result of BOIS's expansive use of the infringing mark, particularly because this case involves a theory of reverse confusion, and evidence was presented to establish that BOIS's extensive use of the mark overwhelmed Maryed's prior use and essentially usurped the value of the Maryed mark. Therefore, this factor weighs in favor of allowing some damages to SCJ based on the value of its usurped mark, but not any additional or enhanced damages to account for a particular volume of diverted sales.

With respect to the third Synergistic factor, the adequacy of other remedies, the Court will consider in detail below the scope of an appropriate injunction in this case, in light of the jury's finding of infringement. In addition to the potential injunction set out below, the Court concludes that the jury's award of damages based on a "reasonable royalty" amount would be adequate to compensate SCJ for the infringement by BOIS in this case. Under the circumstances of this case, the award of an injunction, to the extent it may be warranted as set out below, in conjunction with a reasonable royalty would compensate for the lost value of the Maryed mark and the benefit gained by BOIS based upon BOIS's willful infringement. However, the Court in its discretion concludes that, based on the equities in this case, no further enhancement would be needed to adequately compensate SCJ for the infringement in this case.

With respect to the fourth Synergistic factor, any unreasonable delay by the plaintiff in asserting his rights and seeking judicial relief, the Court notes first that the jury rejected BOIS's potential defenses of laches and acquiescence in this case. As a result, it is clear that the jury determined that there was no unreasonable delay by SCJ or Maryed in this case that would bar

25

SCJ's claims entirely. However, the Court nevertheless concludes that in considering the circumstances of this case, some consideration of the delay by Maryed in seeking judicial relief is appropriate in determining an award of damages. In this regard, the Court notes that Maryed spent several years collecting evidence of "confusion" without engaging in any further discussions with BOIS regarding the alleged infringement. Thus, although BOIS was on notice of Maryed's general objections after their early interactions in 2003, the ultimate delay of two years before the present suit was filed, and Maryed's failure to further bring its concerns to the attention of BOIS during that time, resulted in BOIS spending several years building and marketing its brand before Maryed assigned the mark to SCJ and the present suit was filed. Given the delay by Maryed in pursuing judicial relief and the circumstances surrounding the parties' interactions, and particularly in light of BOIS's investment in its mark during that time, the Court concludes that this factor weighs in favor of awarding sufficient damages to compensate for the lost value of the Maryed mark, but not any enhanced damages or other additional award that would penalize BOIS in these circumstances.

Fifth, with respect to the public interest in making the defendants' conduct unprofitable, the Court notes that given BOIS's willful infringement, some compensation is appropriate to represent the value of what BOIS intentionally usurped from Maryed and SCJ. As noted above, this was a reverse confusion case, and "reverse confusion protects 'smaller senior users . . . against larger, more powerful companies who want to use identical or confusingly similar trademarks.'" A& H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 228 (3d Cir. 2000) (quoting Fisons Horticulture, Inc. v. Vigoro Industries, Inc., 30 F.3d 466, 475(3d Cir.

1994)).  However, the Court of Appeals for the Third Circuit has also noted that "[t]he chief danger inherent in recognizing reverse confusion claims is that innovative junior users, who have invested heavily in promoting a particular mark, will suddenly find their use of the mark blocked by plaintiffs who have not invested in, or promoted, their own marks." Id. at 228.  The present case before the Court is an example of this tension, such that failure to recognize a reverse confusion claim would allow BOIS to usurp and overwhelm the Maryed mark, but, on the other hand, recognizing the reverse confusion claim here would ultimately bar BOIS from using a mark it has heavily invested in, despite Maryed's and SCJ's more limited use of the Maryed mark and decreasing use of the mark over the past few years.  The Court concludes that these competing policy concerns should be considered as part of the public interest in determining an appropriate damages award in this case.  In addition, in considering the public interest, the Court notes that an award of enhanced damages could have a potential anti-competitive effect in this case, by allowing SCJ to obtain an assignment of the Maryed mark and then not only enforce that mark, but actually obtain damages that would significantly affect the business operations and viability of BOIS as a competitor.  Even if SCJ did not have any intent to affect the viability of BOIS as a competitor, the Court nevertheless finds that the public interest would weigh against an award of damages that would result in or authorize such an anti-competitive effect.  Therefore, the Court concludes that while the public interest in this case would support a damages award that recognizes the value of the mark and the damage caused by BOIS's infringement (and essential usurpation) of that mark, the public interest would nevertheless weigh against any enhanced damages, which would improperly penalize BOIS and which would

have an undesired anti-competitive effect under the circumstances in this case.

Finally, with respect to the final <u>Synergistic</u> factor, "palming off," SCJ concedes that this factor is not applicable here, since there is no evidence that BOIS was misrepresenting to the public that its products were actually Maryed's products. This factor is not determinative on the question of damages, but the Court notes that consideration of this factor illustrates that the present case is far removed from those cases where a party deceptively attempts to sell their own products under a competitor's name, for which enhanced damages are particularly appropriate.

Having considered all of the relevant factors and all of the contentions of the parties regarding the appropriate award of damages in this case, the Court finds that the $280,000.00 award by the jury is reasonable, equitable, supported by the record, and sufficient to compensate SCJ in this case, but that no enhanced damages would be appropriate under § 1117, either as a trebling of "actual damages," or as an increase based on alleged "inadequacy" of damages. Therefore, the Court in its discretion, under the principles of equity, particularly in view of the circumstances of this case, concludes that the jury's award of $280,000.00 is an appropriate and adequate amount of damages in this case. As a result, SCJ's Motion for Enhanced Damages [Doc. #301] will be denied.

## V.     SCJ's Motion for Attorneys' Fees and Costs [Doc. #318] and Motion for Prejudgment Interest [Doc. #314] as to Trademark Infringement Claim

Based on the jury's verdict in its favor on the claim of trademark infringement related to the Maryed mark, SCJ has filed a Motion for Attorneys' Fees and Costs [Doc. #318], seeking to recover attorneys' fees and costs under the Lanham Act as the prevailing party on the trademark infringement claim. Under 15 U.S.C. § 1117(a), "[t]he court in exceptional cases may

28

award reasonable attorney fees to the prevailing party." The Court of Appeals for the Fourth Circuit has held that

> [u]nder 15 U.S.C. § 1117(a), a case is "exceptional" if the defendant's conduct was "malicious, fraudulent, willful or deliberate in nature." <u>Scotch Whisky Ass'n v. Majestic [Distilling] Co., Inc.</u>, 958 F.2d 594, 599 (4th Cir.[1992]). In other words, a prevailing plaintiff must "show that the defendant acted in bad faith." <u>Id.</u> <u>See also</u> <u>Texas Pig Stands v. Hard Rock Café Int'l, Inc.</u>, 951 F.2d 684, 697 (5th Cir. 1992) (the term "exceptional" should be "interpreted by courts to require a showing of a high degree of culpability on the part of the infringer, for example, bad faith or fraud").

<u>People for the Ethical Treatment of Animals v. Doughney</u>, 263 F.3d 359, 370 (4th Cir. 2001). In addition, even in exceptional cases, the award of attorneys' fees under the Lanham Act is a matter of the Court's discretion based on the equities of each case. <u>See</u> <u>International Olympic Committee v. San Francisco Arts & Athletics</u>, 781 F.2d 733, 738 (9th Cir. 1986) (noting that because the statute uses the term "may," an award of attorneys' fees is "discretionary even if it fits within the statutory standard of an exceptional circumstance").

In the present case, although the jury found that the infringement by BOIS in this case was "willful," the Court has nevertheless concluded that BOIS's conduct should not be characterized as malicious, fraudulent or in bad faith, as discussed in Section IV above. As noted there, BOIS originally selected its mark without any intent to trade on Maryed's goodwill, and without intent to commit fraud on the public. In addition, BOIS had multiple bases for challenging the validity, scope and enforceability of the Maryed mark. In considering all of the circumstances of this case, even accepting the jury's finding of willfulness, the Court has concluded that the conduct by BOIS in this case is not so fraudulent, malicious, or deceptive so as to render it "exceptional" when compared to other trademark infringement cases.

29

In addition, to the extent that SCJ contends that an award of attorneys' fees is appropriate based on the conduct by BOIS during the course of this litigation, the Court finds that none of the conduct or positions taken by BOIS during the litigation would establish "bad faith" or otherwise support an award of attorneys' fees. Both sides strongly contested the factual and legal issues involved in this case, but the Court concludes that the positions taken by the parties do not establish fraud or bad faith on either side in the course of this litigation.

Finally, the Court notes that an award of attorneys' fees is not necessary to provide a complete remedy to SCJ in the circumstances of this case. In this regard, the Court notes that SCJ voluntarily chose to obtain the assignment of the Maryed mark shortly before filing the present suit. In addition, SCJ representatives readily admitted that the Maryed mark was obtained by SCJ at least in part to further support SCJ's primary trademark infringement claim against BOIS for alleged infringement of SCJ's OFF! mark. As previously noted, SCJ's trademark infringement claim related to the OFF! mark was dismissed at summary judgment. Although the Court has found that SCJ is entitled to compensation for the willful infringement of the Maryed mark by BOIS, the Court further finds that an award of attorneys' fees would not be appropriate in the circumstances of this case and is not necessary to provide SCJ a complete remedy for the claim of trademark infringement as to the Maryed mark, on which SCJ prevailed.

Therefore, having considered all of the evidence presented and all of the parties' contentions, the Court concludes that BOIS did not act with the level of malicious, fraudulent or deliberate behavior necessary to make this case an "exceptional case" under the Lanham Act. Moreover, even if this case were considered "exceptional," the Court in its discretion concludes

30

that an award of attorneys' fees or costs is not appropriate in this case and is not necessary to provide a sufficient remedy to SCJ in this case. Therefore, SCJ's Motion for Attorneys' Fees and Costs [Doc. #318] will be denied.

In addition, to the extent that SCJ may also be separately requesting an award of costs under the Lanham Act, the Court has reviewed the parties' submissions, and concludes in its discretion that in the circumstances of this case, any award of costs to SCJ would essentially be offset by a cross-award of costs to BOIS since BOIS and SCJ each prevailed on claims in this case, with BOIS prevailing on the false advertising claim and SCJ prevailing on the trademark infringement claim, and with neither side prevailing significantly more than the other. In addition, the Court notes that the costs requested include hundreds of thousands of dollars in costs on each side, with only portions attributable to the "prevailing" claim, with significant dispute regarding whether the costs were reasonably incurred, and with the end result an equitable offset of costs on each side. Therefore, given the size and scope of this litigation, the ultimate result, and the equities of the case discussed above, the Court will not make cross-awards of costs on these claims, and SCJ's request for costs will be denied.[4]

Finally, the Court notes that SCJ has also filed a Motion for Prejudgment Interest [Doc. #314] seeking to recover prejudgment interest on the damages award for the trademark

---

[4] The Court also reaches the same conclusion with regard to any request for costs under Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920. Specifically, the Court notes that both sides prevailed as to certain claims in this case, with neither side obtaining a more substantial win than the other. As a result, both sides are "prevailing parties," and there are substantial questions as to what costs were reasonably incurred for which claims. In light of these issues and the size and scope of the litigation, and the end result achieved, the Court concludes that each side should bear its own costs.

infringement claim. In support of this Motion, SCJ contends that it is entitled to prejudgment interest because this case is an "exceptional case" under 15 U.S.C. § 1117(a). However, § 1117(a) does not expressly provide for prejudgment interest, and even if prejudgment interest were recoverable under § 1117(a), this Court has concluded that this case is not an "exceptional case" under the Lanham Act. Moreover, the Court also concludes that the jury award in this case is sufficient and adequate to compensate SCJ in the circumstances set out here, and the Court in its discretion declines to award prejudgment interest, even if it were potentially available under § 1117(a). Therefore, SCJ's Motion for Prejudgment Interest [Doc. #314] will also be denied.

## VI. SCJ's Motion for Litigation Expenses Related to Defendants' Failure to Admit Certain Requests for Admission [Doc. #306]

SCJ has also filed a separate Motion for Litigation Expenses [Doc. #306] seeking to recover attorneys' fees and expenses incurred by SCJ as a result of BOIS's failure to admit certain requests for admission. SCJ brings it Motion pursuant to Federal Rule of Civil Procedure 37(c)(2), which provides that

> If a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof. The court must so order unless:
> (A) the request was held objectionable under Rule 36(a);
> (B) the admission sought was of no substantial importance;
> (C) the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or
> (D) there was other good reason for the failure to admit.

Requests for admission are governed by Federal Rule of Civil Procedure 36, which provides that

> A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule

32

26(b)(1) relating to:
(A) facts, the application of law to fact, or opinions about either; and
(B) the genuineness of any described documents.
. . . .
 If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

In the present case, SCJ served Requests for Admission, and BOIS responded.  BOIS subsequently filed supplemental objections and responses, and later discussed the Requests for Admission at a meeting with counsel for SCJ.  However, SCJ contends that BOIS improperly failed to admit that (1) BOIS knew that Maryed was using the "BuzzOff" trademark; (2) that certain printouts of the BOIS website were authentic; and (3) that BOIS had received inquiries from consumers for products sold by Maryed.  With respect to the first category of requested admissions, SCJ requested BOIS to admit that BOIS was "aware that Maryed International used the trademark [BuzzOff] in connection with the sale of products when [they] met with her in or about March 2003" and that BOIS was "aware that Maryed International used the trademark [BuzzOff] in connection with the sale of products when [they] provided her with the proposed Licensing Agreement identified at Bates Number MAR 001498-1443."  BOIS objected "on the ground that it assumes facts not in the record in that what the Maryed International mark consists of, and whether Maryed has or had any valid trademark rights, are disputed issues in this case."  BOIS further responded that "BOIS admits that it was aware, in March of 2003, that Maryed International claimed to have made very limited use of a mark containing the word

33

'buzz' and a picture of a bee in connection with certain 'netwear products' in a very limited geographic region." SCJ contends that BOIS's failure to admit that BOIS was aware of the "BuzzOff" trademark forced SCJ to spend time and money to prove this fact to the jury. In response, BOIS notes that there were substantial issues raised in this case regarding how consumers perceived the Maryed mark, and how Maryed itself had characterized its mark to the United States Patent and Trademark Office. Therefore, BOIS contends that it properly admitted its knowledge or awareness of the Maryed mark as of March 2003 but had good reason to deny any further characterization of the mark as being "BuzzOff." Having considered this issue, the Court finds that BOIS reasonably took the position at trial that Maryed did not possess any valid common law trademark rights, and that to the extent Maryed did have common law rights, those rights were in the mark "Buzz" rather than "BuzzOff." These were in fact key issues in dispute in this case. Although the jury ultimately found against BOIS on these issues, BOIS had a reasonable ground to believe that it might prevail on these issues at trial, and the evidence presented would have supported a jury determination either way. Therefore, because BOIS had a reasonable ground to believe that it might prevail on the matter, the Court will not award litigation expenses for BOIS's failure to admit these requests for admission.

With respect to the second category of requests, SCJ contends that BOIS improperly failed to admit or make reasonable inquiry regarding the authenticity of certain documents. Specifically, in its Requests for Admission, SCJ requested that BOIS admit the authenticity of certain printouts made by SCJ from BOIS's website. SCJ attached the printouts and requested that BOIS admit that the documents were "true and correct printouts taken from the BUZZ

OFF Web Site" on certain dates. However, BOIS objected on various grounds, including the volume of documents involved. BOIS further maintained that it was unable to admit or deny when the printouts were taken from the "BUZZ OFF Web Site," although BOIS admitted "that the documents listed . . . appear to be true and correct printouts taken from the BUZZ OFF Web Site at some point in time." In response to SCJ's present Motion, BOIS notes that it properly admitted that the documents appeared to be true and correct printouts from the BOIS website, but that because the printouts were made by SCJ, not BOIS, BOIS did not have sufficient information to confirm when the printouts were taken from the BOIS website. BOIS also notes that the dates of when the printouts were taken from the BOIS website were not material in the present suit. Having considered this matter, the Court finds that BOIS properly admitted that the documents were what they appeared to be, that is, true and correct printouts taken from the BOIS website. To the extent that BOIS failed to verify the dates the printouts were taken, the Court concludes that BOIS had a good reason for the failure to admit as to the dates, since the printouts were actually made by SCJ and that information was in SCJ's control and was beyond BOIS's ability to confirm. This determination is consistent with the Court's previous determination on SCJ's Motion in Limine to recognize the authenticity of certain documents. In ruling on the Motion in Limine, the Court concluded that SCJ could authenticate its printouts of various websites by calling witnesses who could testify that they viewed and printed the information, or supervised others in doing so, and that the printouts were accurate representations of what was displayed on the listed website on the listed day and time. Therefore, the Court will not impose fees and expenses against BOIS for its failure to admit with

respect to the dates of when the printouts were made.

Finally, with respect to the last category of requests, SCJ contends that BOIS improperly failed to admit that BOIS had "received certain inquiries from consumers for products sold by Maryed International." BOIS objected to the request as "vague and ambiguous" and then specifically denied the request for admission. SCJ now contends that evidence presented at trial established that BOIS did receive correspondence from consumers inquiring as to Maryed products, and that BOIS failed to adequately search its files and then unjustifiably denied this request for admission. However, in response BOIS contends that it is not clear that BOIS in fact received inquiries from consumers for products sold by Maryed. BOIS notes that it did receive one e-mail that was sent to BOIS from a consumer who stated "I purchased a guillie suit from you. Unfortunately, the third time that I wore it, the pants completely ripped. Do you have a warranty or can you help me with this matter?" BOIS did not discuss this existence of this e-mail in its responses to the requests for admission. However, BOIS had previously disclosed the e-mail to SCJ, and in its interrogatory responses prior to the requests for admission, BOIS stated that it "received one email in or around October of 2004 which may or may not have been intended for Maryed." Therefore, it is clear that BOIS fully disclosed the existence of this e-mail to SCJ, but ultimately disputed that this e-mail was necessarily an inquiry from a consumer for products sold by Maryed, and as a result denied SCJ's request for admission. BOIS contends that it took this position in good faith, with a reasonable ground to believe that this e-mail was not necessarily intended for Maryed or was not necessarily an inquiry for products sold by Maryed. Having considered this matter, the Court finds that in these

36

circumstances, BOIS had a reasonable ground to believe it might prevail in this matter. In addition, and significantly here, BOIS had already produced the disputed e-mail to SCJ and had described the e-mail and BOIS's view of the e-mail in its answers to interrogatories. Therefore, in these circumstances and in light of BOIS's disputed view of the e-mail, BOIS had good reason for its failure to admit that BOIS had necessarily "received certain inquiries from consumers for products sold by Maryed International," and the Court will not impose fees and expenses against BOIS for its failure to admit on this issue.

Having considered the arguments of the parties, the evidence presented at trial, and the responses by BOIS to the Requests for Admission, the Court concludes that for all of the reasons discussed above, SCJ's Motion for Litigation Expenses Relating to Defendants' Failure to Admit Certain Requests for Admissions [Doc. #306] should be denied. To the extent that both sides in their briefs request attorneys' fees related to the filing of this motion, the Court finds that there is no basis to award fees to either side. Therefore, those requests will be denied.

## VII. BOIS's Motion for Attorneys' Fees as to False Advertising Claim [Doc. #304]

BOIS has filed its own Motion for Attorneys' Fees [Doc. #304], seeking to recover its attorneys' fees and expenses related to the false advertising claims. BOIS is the prevailing party in this case with respect to the false advertising claims, because the jury found that SCJ had not proved that BOIS engaged in false advertising with respect to BOIS Apparel or the insect repellent treatment process. The jury also found in BOIS's favor on the state law claims, and the Court previously ruled in BOIS's favor in adopting the summary judgment Recommendation and dismissing SCJ's trademark infringement claims related to the OFF! mark. BOIS now

37

contends that it is entitled to attorneys' fees and expenses incurred in defending against those claims, particularly the false advertising claims, based on BOIS's contention that the claims were frivolous, baseless, and brought for an improper, anti-competitive purpose. In this regard, BOIS contends that SCJ identified BOIS as a competitive threat, and then manufactured this lawsuit and drove up the litigation costs in order to put BOIS out of business.

As noted above, under 15 U.S.C. § 1117(a), "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." "Where the defendant is the prevailing party, the standard is not whether the claimant filed suit in good faith but rather whether plaintiff's action was oppressive." S Indus. v. Centra 2000, Inc., 249 F.3d 625, 627 (7th Cir. 2001); see also Scotch Whisky Ass'n v. Majestic Distilling Co., Inc., 958 F.2d 594, 600 (4th Cir. 1992); Retail Services, Inc. v. Freebies Publishing, 364 F.3d 535, 550 (4th Cir. 2004). Therefore, although a prevailing plaintiff (such as SCJ) must establish "bad faith" to recover attorneys' fees, a prevailing defendant (such as BOIS) need not establish bad faith on the part of the plaintiff to prove an "exceptional" case under section 35(a) of the Lanham Act.[5] "Relevant factors include 'economic coercion,' 'groundless argument[s],' and failure to cite controlling law." Ale House

_____

[5] The Court notes that the Supreme Court has held that in cases under the Copyright Act, a consistent standard should apply for fee awards to prevailing plaintiffs and prevailing defendants. See Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994). The Fourth Circuit has acknowledged that the Fogerty decision could impact the standard for fee awards in Lanham Act cases, but the Fourth Circuit has nevertheless continued to apply the previously-articulated test as set out above. See, e.g., Retail Services, Inc. v. Freebies Publishing, 364 F.3d 535, 550 (4th Cir. 2004). Therefore, although SCJ contends that BOIS must establish "bad faith," the Court has continued to apply the lower standard for prevailing defendants as articulated by the Fourth Circuit and as set out above. The Court notes, however, that because BOIS has failed to meet even that lower standard, application of the higher "bad faith" standard would not make a difference in the present case.

Management, Inc. v. Raleigh Ale House, Inc., 205 F.3d 137, 144 (4th Cir. 2000); see also S Indus., 249 F.3d at 627 ("A suit is oppressive if it lacked merit, had elements of an abuse of process claim, and plaintiff's conduct unreasonably increased the cost of defending against the suit."). "Under the Lanham Act, an award of attorneys fees is committed to the trial court's sound discretion." S Indus., 249 F.3d at 627.

In the present case, the Court notes first that the false advertising claims and state law claims asserted by SCJ in this case were not frivolous or groundless, and in fact, the Court concluded above that the evidence presented at trial could have supported a verdict either way on these claims. With respect to SCJ's trademark infringement claim related to the OFF! mark, the Court notes that although the trademark infringement claim related to the OFF! mark was dismissed by the Court prior to trial, the Court nevertheless finds that the OFF! trademark infringement claim was not frivolous or baseless. Therefore, contrary to BOIS's contentions, the Court concludes that none of the claims asserted by SCJ in this case were frivolous or baseless so as to support an award of attorneys' fees in this case.

With respect to BOIS's contentions that SCJ pursued this litigation for an improper anti-competitive purpose, the Court finds that based on the evidence presented, SCJ did not pursue this case for an anti-competitive purpose. Instead, the Court finds that SCJ pursued the false advertising claims because SCJ wanted to challenge what it viewed as false claims by BOIS and BOIS's partners that BOIS Apparel was superior to insect repellent sprays or eliminated the need for insect repellent sprays such as those produced by SCJ under its OFF! mark. Similarly with respect to the trademark infringement claims, the Court finds that SCJ obtained an

assignment of the Maryed mark and associated goodwill prior to trial at least in part because, as SCJ freely admitted, SCJ wanted to provide further support for its trademark claims related to the OFF! mark. This assignment from Maryed was motivated not by an anti-competitive purpose to bankrupt or otherwise threaten BOIS, but rather by SCJ's desire to strengthen its OFF! mark by obtaining an assignment of the "BuzzOff" mark from Maryed, giving SCJ priority of use in that "BuzzOff" mark. Cf. Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc., 43 F.3d 922, 931 (4th Cir. 1995). To the extent that this lawsuit could nevertheless have an improper anti-competitive effect, the Court has considered, in evaluating the damages award in this case, the need to avoid imposing damages that would have an anti-competitive effect in these circumstances. The Court has therefore taken these issues into account as appropriate, but the Court nevertheless finds that SCJ's claims in this case were not motivated by improper anti-competitive intentions so as to support BOIS's request for attorneys' fees.

In addition, with respect to BOIS's contention that SCJ intentionally drove up litigation expenses in this case, the Court finds that this case was indeed heavily litigated, with zealous representation on both sides. However, the Court does not find any evidence that either side improperly sought to drive up costs or otherwise use the litigation for an improper purpose.

To the extent that BOIS contends that attorneys' fees are also appropriate in the Court's discretion under state law because SCJ "knew, or should have known, the action was frivolous or malicious," the Court concludes that for the reasons stated above, the action was not frivolous or malicious. As noted above, this lawsuit was not a competitive ploy, and was not motivated by economic coercion. SCJ did not have any "reason to know" that the action was

frivolous or malicious. In addition, the Court notes that the jury did find that BOIS engaged in an "unfair act" under state law based on the trademark infringement, although the jury did not find actual damages under state law on that claim. In considering the state law claims, the Court finds that the state law claims were not baseless or groundless, and do not rise to the level of being frivolous or malicious to support an award of attorneys' fees. Therefore, the Court in its discretion will not award BOIS attorneys' fees under state law.

Finally, BOIS seeks an award of "the costs of the action" separate from its request for attorneys' fees. However, as discussed above in relation to SCJ's similar request for costs, the Court has reviewed the parties' submissions, and concludes in its discretion that in the circumstances of this case, any award of costs to the parties would essentially be offset against one another. Because both sides prevailed as to certain Lanham Act claims in this case, and given the size and scope of this litigation and the resulting questions as to what costs were reasonably incurred for which claims, as well as the equities of the case discussed above, the Court will not make cross-awards of costs on these claims. Therefore, having considered this issue and the parties' contentions, BOIS's request for costs will be denied.

For all of the reasons set out above, the Court concludes that BOIS's Motion for Attorneys' Fees and Costs [Doc. #304] should be denied.

## VIII. SCJ's Motion for Permanent Nationwide Injunction

The Court now turns to SCJ's Motion for a Permanent Nationwide Injunction seeking to prevent BOIS from any future use of BOIS's "BUZZ OFF" mark. In support of this Motion, SCJ contends that it has established nationwide common law rights in the "BuzzOff"

mark used by Maryed as its predecessor-in-interest and its licensee, including through substantial Internet advertising and Internet-based sales by third party retailers. SCJ contends that it is therefore entitled to a permanent injunction to prevent BOIS's continued infringement of the mark. SCJ particularly seeks to enjoin BOIS's infringing Internet advertising and BOIS's use of the website <buzzoff.com>. SCJ further contends that BOIS was not a good-faith remote user of its mark, as evidenced by the jury finding of willful infringement, and that BOIS should therefore not be entitled to continue any concurrent use of the mark.

In response, BOIS contends that SCJ is not entitled to an injunction because SCJ does not have nationwide common law rights in the Maryed mark. In support of this contention, BOIS again asserts that Maryed's sales of products using the "BuzzOff" mark were de minimis and were not nationwide. BOIS also contends that even if SCJ does have nationwide common law rights in the Maryed mark, SCJ is not entitled to an injunction under the standards articulated by the Supreme Court in <u>eBay Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006). Finally, BOIS contends that if an injunction is issued, it should be equitably tailored in scope and timing to remedy any actual harm to SCJ and avoid unnecessary harm to BOIS.

Under the Lanham Act, courts "shall have the power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent . . . a violation under [15 U.S.C. § 1125]." 15 U.S.C. § 1116(a). In considering whether to impose a permanent injunction, courts consider whether the injured party has established "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are

inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. at 391, 126 S. Ct. at 1839; see also Christopher Phelps & Assocs., LLC v. Galloway, 492 F.3d 532 (4th Cir. 2007). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." eBay Inc. v. MercExchange, L.L.C., 547 U.S. at 391, 126 S. Ct. at 1839.

In considering whether to grant an injunction in the present case, the Court will first consider BOIS's contention that SCJ is not entitled to any injunctive relief because SCJ cannot establish nationwide common law rights in the Maryed mark. In considering this contention, the Court notes that the jury in this case has already determined that SCJ has established common law rights in the "BuzzOff" mark. Moreover, after considering the evidence presented in this case, the Court likewise finds that SCJ, through Maryed as its predecessor-in-interest, established common law rights at least prior to 2003 in the "BuzzOff" mark used in interstate commerce in connection with insect-repellent clothing products. BOIS nevertheless contends that even if SCJ has common law rights in some geographic areas, BOIS should be allowed to continue using its "BUZZ OFF" mark as a concurrent user in other geographic areas not penetrated by Maryed or SCJ. However, based on the evidence presented, the Court finds that although Maryed's sales were limited in actual value in some states, Maryed has sold its products under the "BuzzOff" mark in all fifty states, with substantial sales in geographically diverse areas across the country. Having considered all of the evidence, the Court concludes that SCJ's

common law rights extend nationwide by virtue of sales of products in all fifty states, placement of products for sale in catalogs distributed nationally, nationwide advertising and promotion of the products, including extensive use of the "BuzzOff" mark on the Internet, nationwide media coverage, and Internet sales of products using the "BuzzOff" mark through third party retailer sites. Therefore, SCJ does possess nationwide common law rights in the Maryed mark. In addition, the Court finds that BOIS used distribution and advertising channels similar to, and even identical to, Maryed. Specifically, BOIS engaged in Internet advertising and nationwide sales through third party retailer sites, including some of the same third party retailers as Maryed. Therefore, BOIS's use of its mark was not geographically remote from Maryed's use of the "BuzzOff" mark. In addition, the Court notes that the jury in this case found that BOIS's infringement was willful, and the evidence presented would establish that BOIS knew of the Maryed mark and nevertheless developed its business using its own confusingly similar mark, without regard to Maryed's rights. As such, the Court concludes that BOIS would not be entitled to continue concurrent use of the mark in any separate geographic areas.

Having concluded that SCJ has nationwide common law rights in the Maryed mark, the Court will turn to an examination of the four equitable "eBay" factors to determine whether an injunction should issue in this case. With respect to the first equitable factor, that is, whether SCJ has established irreparable injury, the Court notes that BOIS contends that SCJ has not established any injury in this case. However, the Court has found above that SCJ has established actual injury based on BOIS's infringement of the Maryed mark. The Court further finds that continued infringement by BOIS will cause irreparable injury to the value of the Maryed mark.

44

To the extent that BOIS contends that no irreparable injury exists because Maryed is now winding down its business and ceasing use of the mark, the Court concludes that, based on the evidence presented, Maryed is continuing its use of the "BuzzOff" mark as SCJ's licensee, and allowing continued infringement by BOIS would cause irreparable harm to SCJ and to Maryed as its licensee.[6] This factor therefore weighs if favor of granting injunctive relief in the present case.

With respect to the second equitable "eBay" factor, that is, whether other remedies such as monetary remedies are inadequate to compensate for the injury, the Court notes that the jury's award of damages of $280,000.00 is an appropriate award, as discussed above, but would not remedy future infringement and would not prevent ongoing reverse confusion. Therefore, the Court finds that the monetary recovery is not adequate alone to fully compensate for the injury in this case. Therefore, this factor would also weigh in favor of granting injunctive relief in the present case.

However, with respect to the third equitable factor, that is, whether a remedy in equity is warranted given the balance of hardships between the parties, the Court finds that this factor weighs in favor of denying an injunction, or limiting the scope of any injunction that is entered.

---

[6] The Court notes, however, that should SCJ (or Maryed as its licensee) ultimately terminate the "Buzz Off Outdoor Wear" business and abandon use of the mark, BOIS could move pursuant to Federal Rule of Civil Procedure 60(b)(5) for a modification of any injunction issued here. Cf. Money Store, Inc. v. Harriscorp Finance, Inc., 885 F.2d 369 (7th Cir. 1989) (considering modification of permanent injunction but ultimately upholding district court decision not to modify injunction against junior user where senior user had not completely abandoned mark and was still continuing business operations under the contested mark); Agostini v. Felton, 521 U.S. 203, 117 S. Ct. 1997, 138 L. Ed. 2d 391 (1997) (discussing Rule 60(b)(5) standard).

Specifically, the Court notes that BOIS invested significant time and resources establishing its business, and was not engaging in fraud or other aggravated conduct. In addition, SCJ acquired the Maryed mark and associated goodwill in an effort to strengthen its OFF! mark, which is no longer at issue in this case, and as the Court has discussed above, any remedy awarded in this case should not have an anti-competitive effect by unnecessarily impairing BOIS's business. Moreover, Maryed's ongoing use of the mark as SCJ's licensee has decreased as its business has declined due to other, external factors. Thus, the potential hardships to BOIS would seem to outweigh the hardships to SCJ and Maryed unless the injunction is limited or tailored to address the circumstances of this case. In considering and balancing these hardships, the Court also notes that based on press releases issued by BOIS after the trial in this matter concluded, BOIS has, on its own initiative, converted to advertising and labels using the brand name "Insect Shield" rather than "BUZZ OFF." BOIS continues to use the full business name "Buzz Off Insect Shield, LLC," but its new advertising and branding do not include any short form reference to "BUZZ OFF." In its briefing, BOIS has noted that converting to new branding takes an extended period of time, and in considering the balance of hardships in this case, the Court finds that given the complexity of this case, sufficient time has now passed to allow BOIS to convert to its new branding in an orderly fashion without catastrophic effects on its business. Under these circumstances, the Court concludes that it would not impose too great a hardship on BOIS to enjoin BOIS from any use of "BUZZ OFF" standing alone, including use of the website <buzzoff.com>. However, the Court further finds that BOIS should be allowed to continue use of the business name "Buzz Off Insect Shield, LLC." Requiring BOIS to change

46

its business name would go beyond what is necessary to remedy the harms to SCJ or Maryed in this case. However, to further protect against any harm to the Maryed mark and help avoid any future consumer confusion, the Court finds that any advertising or information using the full "Buzz Off Insect Shield, LLC" name should include a specific disclaimer noting that BOIS is not affiliated with "Buzz Off Outdoor Wear" produced by Maryed International as a licensee of S.C. Johnson & Co. In addition, BOIS will be prohibited from using the words "Buzz Off" alone, or placing any separate emphasis on "Buzz Off" in its business name. These provisions will apply to any information produced by BOIS or by BOIS's third party partners if the third party partner is linked by BOIS on BOIS's website. Based on BOIS's press releases, it appears that these provisions are consistent with BOIS's already-implemented conversion to the use of "Insect Shield" rather than "BUZZ OFF" in its advertising and labeling. However, in order to provide BOIS with sufficient time to make these final adjustments, the injunction will take effect 60 days from the date it is entered, and will not apply to prohibit BOIS's third party partners from selling off any remaining inventory labeled with the existing but hereinafter enjoined "BUZZ OFF" labels.[7] The Court concludes that these provisions, along with the monetary award discussed above, are sufficient to remedy and protect against the infringement found by the jury in this case, but are tailored to reduce the hardship to BOIS. The Court finds that any broader injunction would impose too great a hardship to BOIS in balancing the hardships in this

---

[7] To the extent additional time may be necessary to comply with some portion of the injunction, or to the extent that some modification of the injunction may be appropriate under the particular circumstances, the Court will retain jurisdiction over the terms and implementation of the injunction, and either party may file motions for modification in this case for consideration by the Court.

case. Finally, the Court notes that tailoring the injunction in this manner would also best serve the public interest, which is the fourth equitable "eBay" factor, because it would address the infringement and consumer confusion found by the jury in this case but without imposing an undue, anti-competitive burden on BOIS. For these reasons, SCJ's Motion for a Permanent Nationwide Injunction [Doc. #316] will be granted, but with the limitations discussed above. The Court will enter a separate Order setting out the terms of the injunction consistent with the analysis set out herein.

## IX.    Other Remaining Motions

Having resolved the pending post-trial motions, the Court notes that BOIS has also filed a "Conditional Motion for New Trial" [Doc. #311], in which BOIS "conditionally moves for a new trial if the verdict is changed, supplemented or amended in any way or if the court awards any additional relief." Because the jury's verdict has not been changed, supplemented or amended in any way, this Motion appears to be moot. However, the Court has nevertheless addressed this alternative motion as part of the consideration of BOIS's Motions for Judgment as a Matter of Law in Section II above. To the extent that any issues remain before the Court with respect to this Motion, the Court concludes that the Conditional Motion for a New Trial [Doc. #311] should be denied.

In addition, the Court notes that BOIS has also requested oral argument on the various post-trial motions. However, given the Court's extensive involvement in the pretrial and trial issues related to this litigation, the Court concludes that oral argument is unnecessary to resolve any of the issues contested by the parties. Therefore, BOIS's request for oral argument [Doc.

#366] will be denied.

## X.    CONCLUSION

For the reasons set out above, IT IS ORDERED that SCJ's Motion for a New Trial on the False Advertising Claims [Doc. #312] is DENIED; BOIS's Motion for Judgment as a Matter of Law on the Trademark Infringement Claim [Doc. #295] and Motion for Judgment as a Matter of Law with Respect to the Jury's Determination of Willfulness [Doc. #297] are both DENIED; BOIS's Motion for Judgment as a Matter of Law and to Alter or Amend the Judgment as to Damages [Doc. #299] is DENIED; SCJ's Motion to Enhance the Damages Award [Doc. #301] is DENIED; SCJ's Motion for Attorneys' Fees under the Lanham Act [Doc. #318] and Motion for Prejudgment Interest under the Lanham Act [Doc. #314] are both DENIED; SCJ's Motion for Attorneys' Fees and Expenses based on BOIS's Failure to Admit Certain Requests for Admissions [Doc. #306] is DENIED; BOIS's Motion for Attorneys' Fees [Doc. #304] is DENIED; SCJ's Motion for a Nationwide Injunction [Doc. #316] is GRANTED as set out herein and as further set out in a separate Permanent Injunction Order entered contemporaneously herewith; BOIS's Conditional Motion for a New Trial [Doc. #311] is DENIED; and BOIS's request for oral argument [Doc. #366] is DENIED.

As a result of these determinations, the Clerk is directed to enter Judgment in this case pursuant to the Jury Verdict awarding $280,000.00 in favor of Plaintiff SCJ on SCJ's claim of trademark infringement related to the Maryed mark. All other claims are dismissed with prejudice.[8] Finally, as discussed in Section V above, each side will bear its own costs.

---

[8] The Court notes that BOIS originally brought parallel counterclaims for declaratory judgment as to all of the claims asserted in this suit by SCJ. However, the parties agreed at trial

49

This, the 6th day of March, 2009.

United States District Judge

---

that the jury's determinations would resolve both the claims and the declaratory judgment counterclaims, and the declaratory judgment counterclaims were therefore essentially merged into the determination of the substantive claims. Pursuant to the jury's verdict, the Court has dismissed all of SCJ's remaining claims with prejudice, which also effectively resolves the parallel declaratory judgment counterclaims.